Winifred S. NANCE, Appellee,

v.

UNION CARBIDE CORPORATION, CONSUMER PRODUCTS DIVISION, a corporation, Appellant.

No. 75–2234.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1976.

Decided July 28, 1976.

As Modified on Denial of Rehearing and Rehearing En Banc Sept. 23, 1976.

J. Frank Ogletree, Jr., Greenville, S.C. (H. Lane Dennard, Jr. and Stuart M. Vaughan, Jr., Greenville, S.C., on brief), for appellant.

Robert Belton, Charlotte, N.C. (Jonathan Wallas, Charlotte, N.C., on brief), for appellee, Susan J. Johnson, Atty., EEOC, Washington, D.C. (Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg and Charles L. Reishel, Attys., EEOC, Washington, D.C., on brief), as amicus curiae.

Before BUTZNER, RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This appeal arises out of an action charging sex discrimination in employment rights under Title VII. After trial, the District Court granted both individual and broad class relief. The defendant has appealed. We modify the decree and remand for entry of decree as hereinafter indicated.

The plaintiff is a female employee at the Charlotte, North Carolina battery plant of the defendant. Her employment began in 1952 and has been continuous since, save for layoffs. Following a layoff in January, 1970, she filed with the Equal Employment Opportunity Commission [1] over a period of some eleven months a succession of five charges alleging sex discrimination. All arose basically out of her layoff. Following receipt from the EEOC of a "suit letter," this judicial action was begun, and after trial, resulted in the judgment from which this appeal is taken.[1a]

A preliminary issue, earnestly pressed by the defendant and briefed by both parties, is whether this action is to be treated as a

1. Hereafter referred to as EEOC.

1a. 397 F.Supp. 436.

class action or as an individual action. Concededly it was brought as an individual action.[2] This individual character of the action was not merely affirmed in the complaint as filed, it was so stipulated categorically in the record by the plaintiff herself at an early stage of the proceedings. This stipulation resulted from a motion by the defendant for a more definite statement by the plaintiff, setting forth the persons or class, if any, the plaintiff sought to represent. By this motion the defendant manifestly sought to establish definitely and finally whether the plaintiff intended to make any claim that her action was a class action. The motion was denied by the Court on the express condition "that the plaintiff [would] plead or file stipulations with regard to the class action aspects of the case, indicating more specifically the make-up of the class and the identity of the plaintiffs." By way of answer to such order, the plaintiff filed of record a stipulation to the effect that she did "not contemplate at this time seeking to amend the complaint to allege a class action, however, the plaintiff is of the opinion that whatever benefits she may obtain in this action should inure to the benefit of other similar situated females" at the Charlotte plant.[3]

■ At no time after the entry of this stipulation did the plaintiff seek to convert her individual action into a class action; she made no motion to amend her complaint to state a class action; she at no point endeavored to declare "specifically the make-up of the class and the identity of the plaintiffs" she would represent as a class representa-

tive; in sum, she did nothing thereafter to comply with or satisfy the requirements for both alleging and establishing a right to proceed as a class action under Rule 23. Moreover, in a formal order, entered on January 24, 1974, on the eve of the commencement of trial in March of that year, and some eighteen months after this action was commenced, the District Court sustained the plaintiff's objections to certain interrogatories submitted by the defendant because of, as the Court put it, "representations of Plaintiff's counsel that this suit was brought and remains an individual action and not a class action and that back pay is not sought for, and cannot extend as a result of this suit to anyone other than the named plaintiff."[4] Nor did the District Court ever hold a hearing on class certification under Rule 23 or enter an order of class certification or set forth any definition of class or classes of which plaintiff was declared a representative or make any provision for notice to any identified class, all as contemplated under Rule 23. The issue thus is whether, in these circumstances, and in the face of two express "representations" by the plaintiff to the Court that her action was strictly an individual action, and in the absence of any order of any class certification by the Court itself, this action can fairly be declared a class action in compliance with Rule 23.

■ Despite the fact that Title VII actions often are described as "inherently class suits" and that the requirements of Rule 23 "must be read liberally in the context of suits brought under Title VII and

---

2. *See Katz v. Carte Blanche Corporation* (3d Cir. 1974) 496 F.2d 747, 760, *cert. denied* 419 U. S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974): "* * * *the plaintiff, not the judicial system,* controls whether or not to ask for class action treatment." (Emphasis added)

3. The latter part of this statement represents, as we understand it, an expression of plaintiff's counsel's opinion that any legal issue decided favorably to the plaintiff in this suit against the defendant may be availed of by way of collateral estoppel in any individual suit instituted or tried subsequently by one asserting the same seniority claim as the plaintiff against the defendant. *Katz v. Carte Blanche Corporation,*

*supra,* at 762; *Bradford v. Peoples Natural Gas Company* (W.D.Pa.1973) 60 F.R.D. 432, 435.

4. This order creates another difficulty in possibly considering this as a class action. Such order, entered on the eve of trial and circumscribing defendant's right of discovery on the assumption the action was purely an individual one, would put the defendant at a likely disadvantage at trial, if thereafter, without notice to the defendant, the action were converted into a class action. Such possible prejudice under such circumstances to the defendant would make treatment of the action as a class action inequitable.

Section 1981," [5] the plaintiff in such an action, in order to establish the right to proceed as a class representative, "must [like any other plaintiff] establish that the action meets the requirements of Rule 23(a);" employee discrimination suits do not represent exemptions from the terms of such Rule.[6] Rule 23 contemplates that every plaintiff, in order to qualify for class treatment thereunder, will seek 'class relief * * * in the complaint," [7] and in the absence of such an allegation, class treatment is generally considered inappropriate. An express ruling to this effect was made in *Danner v. Phillips Petroleum Co.* (5th Cir. 1971) 447 F.2d 159, a case very similar in its facts to the one under review here. In *Danner,* the plaintiff, a female, contended that, under the defendant's seniority practices, female employees were discriminated against in favor of male employees and that, as a result of such discriminatory seniority system, she had been laid off in violation of the terms of Title VII. She, as has the plaintiff here, filed her action under Title VII as an individual action. In holding "that class action relief must be predicated upon a proper class action complaint satisfying all the requirements of Rule 23," [8] the Court said, at p. 164:

" * * * none of the Rule 23 prerequisites have been satisfied. Mrs. Danner sued as an individual plaintiff; she established a prima facie case of sex discrimination against herself by proving that she had been discharged in a plant economy move because she possessed no seniority or bidding rights, and that no women in the plant had such rights. She showed further that the work she was doing was substantially similar to the work of men in the plant who had seniority and bidding rights, and that she was replaced by men who possessed those rights. Mrs. Danner, however, never took up the banner of women's liberation for all the female employees in the Phillips plant. This, of course, does not mean that female employees of Phillips may not take advantage of Mrs. Danner's judicial victory in the future, or, indeed, that they may not join together in a class action against Phillips if they feel one is justified. But if they decide to bring a class action, it must be brought and identified as such, and the predicate for class action relief must be carefully laid. In the meantime, Mrs. Danner's victory is for her alone to taste and enjoy."

A similar result was reached in *Washington v. Safeway Corporation* (10th Cir. 1972) 467 F.2d 945, 947, and by us in *Carracter v. Morgan* (4th Cir. 1973) 491 F.2d 458, 459. In fact, in the latter case, the plaintiffs had indicated in their complaint that they were suing both individually and as representatives of a class but, in the absence of any certification or identification of the class before a decision on the merits,[9] it was held that class treatment was inappropriate, the Court stating:

"Because of plaintiffs' failure to bring to the attention of the trial court, at any time, the matter of the determination of whether the action would be maintained as a class action, and also because of lack of notice to any class of the proposed final order, we are of opinion that the district court was correct in its actions and the opinion below ought to be affirmed. No determination was ever made at any time that the action be

---

**5.** *Rodriguez v. East Texas Motor Freight* (5th Cir. 1974) 505 F.2d 40, at 50 (U.S. Appeal Pending).

**6.** *Ibid.; Senter v. General Motors Corp.* (6th Cir. 1976) 532 F.2d 511, 520; *Oatis v. Crown Zellerbach Corp.* (5th Cir. 1968) 398 F.2d 496, 499; *Pointer v. Sampson* (D.C.D.1974) 62 F.R.D. 689, 696; *Kinsey v. Legg, Mason & Company, Inc.* (D.C.D.1973) 60 F.R.D. 91, 99.

**7.** *Rodriguez v. East Texas Motor Freight, supra,* 505 F.2d at 50.

**8.** 447 F.2d at 164, n. 10.

**9.** The language of Rule 23(c) makes it quite clear that the determination of class status is to be made "before the decision on the merits." *See Peritz v. Liberty Loan Corporation* (7th Cir. 1975) 523 F.2d 349, 354; *cf. Indianapolis School Comm'rs v. Jacobs* (1975) 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74, and *Jimenez v. Weinberger* (7th Cir. 1975) 523 F.2d 689, U.S. Appeal Pending.

maintained as a class action. F.R.Civ.P. 23(c)(1). No notice was ever given. F.R. Civ.P. 23(e)." [10]

Nor do *Senter v. General Motors Corp., supra,* and *Bing v. Roadway Express, Inc.* (5th Cir. 1973) 485 F.2d 441, relied on by the plaintiff in support of the class relief granted herein by the District Court, support her contention. In *Senter,* the Court at the outset emphasized that there was "no question but that the suit [involved there] was filed as a class action and it proceeded to trial as a class action" and then added that "Appellant [had] identified the suit as a class action in his opening remarks at trial and Appellee [had] responded by freely admitting that the suit had been filed as a class action." In that context, where, as the Court went on to comment, "all the parties [had] proceeded on the assumption that the action was a class action," the Court concluded, citing *Bing v. Roadway Express, Inc.* (5th Cir. 1973) 485 F.2d 441, 446–47, that the action was not improperly treated as a class action.[11] *Bing,* in its pertinent facts and ruling, was not substantially different from *Senter.* In *Bing,* "[i]t was apparent," the Court said, "from the beginning that Bing intended his suit to be a class action;" he had clearly *proclaimed it as such in his complaint;* and, "all parties to the action knew [throughout trial] of its class nature and acquiesced in it." [12] These factual differences—the treatment as a class action from the filing of the complaint throughout the proceedings with the knowledge and "acquiescence" of all parties—were the circumstances which distinguished *Bing* and *Senter* from *Danner.*[13] They are similarly distinguishable from this case.

■ The plaintiff contends, however, that because she filed broad interrogatories that could be construed as relevant to a class action, the defendant was given proper notice that the plaintiff intended to proceed as a class action, and that, though no motion for certification was ever made or an order granting certification entered, the defendant was put on notice that plaintiff was proceeding by way of a class action. To accept such an argument would make a nullity of Rule 23 and the procedure it mandates. Moreover, the plaintiff had stipulated and entered representations on the record, not once but twice, as we have already said, that she was not proceeding by way of a class action. She had unequivocally declared in such record that if she

---

**10.** The reasoning in *Carracter* is confirmed substantially, it would seem, by the later decision in *Indianapolis School Comm'rs v. Jacobs* (1975) 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74. In that case the action was clearly declared a class action in the complaint but no order was entered certifying it as a class action. The plaintiff prevailed both in the District Court and in the Court of Appeals as if on a class action but, during oral argument in the Supreme Court, it developed that the action was moot as to the individual plaintiff. Since, in the absence of actual certification as a class action, the action remained, in the opinion of the Court, but an individual action, the mootness of the individual claim rendered the case subject to dismissal. The Supreme Court accordingly vacated the judgment, stating at p. 130, 95 S.Ct. at p. 850:

"* * * Because the class action was never properly certified nor the class properly identified by the District Court, the judgment of the Court of Appeals is vacated and the case is remanded to that court with instructions to order the District Court to vacate its judgment and to dismiss the complaint."

In *Franks v. Bowman Transportation Company, Inc.* (1976) 424 U.S. 747, 754, n. 6, 96 S.Ct. 1251, 47 L.Ed.2d 444, 455, n. 6, the Court explained the ruling in *Jacobs,* decided a few weeks ago, thus:

"In *Board of School Commissioners v. Jacobs, supra,* the named plaintiffs no longer possessed a personal stake in the outcome at the time the case reached this Court for review. As the action had not been properly certified as a class action by the District Court, we held it moot."

**11.** *U. S. v. Tarter,* 522 F.2d 520 at 521–22.

**12.** 485 F.2d at 446.

**13.** The distinction between *Bing* and *Danner* was restated in the subsequent case of *Rodriquez v. East Texas Motor Freight, supra,* where Judge Wisdom, after stating that, "[w]hen class relief is sought in the complaint, * * * the court should liberally apply the requirements of Rule 23(a)," explained *Danner* as holding " 'that class action relief must be predicated upon a proper class action complaint satisfying all the requirements of Rule 23'." 505 F.2d at 50 and n. 11.

intended her action to be a class action, she would amend her complaint to evidence such intention.[14] She at no time made such a motion to amend. Entitled to rely on the plaintiff's positive disclaimers of any intention to proceed by way of a class action—disclaimers appearing in formal representations to the Court—the defendant was not obligated to read every interrogatory filed by the plaintiff to determine whether it indicated an unexpressed but implied intention on the part of the plaintiff to disavow her previous disclaimers and to assert a right to proceed as a class action. Furthermore, we do not perceive in the interrogatories any unmistakable sign or notice that the plaintiff contemplated a class action.[15] And this is particularly so, since, even on the eve of trial, the plaintiff was representing unequivocally to the Court, in opposition to defendant's interrogatories, that she was not prosecuting a class action and was not seeking class relief, and the District Court, in reliance on that representation, had entered its order of January 24, 1974, denying in part defendant's right to answers to its interrogatories. Even if it could be thought that plaintiff's interrogatories gave some implied notice that she sought class relief, that implication would have been nullified by the representation made to the trial court, as stated in the order of January 24.

On this record, then, we find no warrant for treating this case as anything more than what the plaintiff herself has designated it, to wit, an individual action, limited as it is to plaintiff's individual claim or claims. It is perhaps not too much to add that, by failing to amend her complaint to seek class relief, and by failing to take any steps either in her pleadings or in positions taken during trial, to comply with Rule 23, and by her several representations

to the trial court, the plaintiff herself has "precluded any class certification in this case."[16]

The real issue in this case is accordingly the validity of plaintiff's individual claim. In that connection, it should be noted that the plaintiff's claim revolves basically around her "company service" status, the computation of which resulted, she alleged, in her layoff in 1970. It was this layoff that precipitated her initial complaint to the EEOC, and it was this layoff which was the sole claim stated by the plaintiff in the first four charges she filed with the EEOC—as a matter of fact, it was not until some eleven months after the filing of her initial charge that she raised any other claim or claims. Nor was the trial judge apparently impressed at trial with these additional claims, belatedly set up by the plaintiff in her fifth amended charge. In a joint letter to counsel for the parties, the trial judge indicated his proposed disposition of the case and, incident thereto, he requested counsel for the plaintiff to "draft proposed findings of fact in brief form" dealing exclusively with loss of seniority "before 1965" and "what methods may be possible to remedy any residual effects of such loss of seniority, if the court finds such loss to have occurred," and requested counsel for the defendant in turn "to prepare proposed findings of fact in favor of the defendant[s] on all of the separate issues that were raised at the trial which do not have to do with the single issue of loss of seniority."[17] It must be assumed from his statements in this letter that the trial judge found that, so far as her individual claim was concerned, the plaintiff was only "aggrieved" by her loss of seniority status, and he intended to limit her relief to this single specific claim of discrimination. The testimony at trial, it is true, had churned up

14. The prerogative of designating the action as a class action rested entirely with the plaintiff, see note 2.

15. Those interrogatories had at least some peripheral connection with the plaintiff's individual charges.

16. *Peritz v. Liberty Loan Corporation* (7th Cir. 1975) 523 F.2d 349 at 354.

17. Some days later the trial judge wrote that there "is probably evidence which would suggest a change in past or in existing practices about posting or not posting notices of vacancies and available promotions."

some other issues, issues not concerned with broad, continuing sex discrimination on defendant's part, but issues involving practices long since abandoned by the defendant. These additional issues, the trial court seemingly regarded as wanting in substance, according to his joint letter to counsel to which we have previously referred. Since, however, both parties have devoted some parts of their argument to these other issues, we shall briefly discuss them.

The first of these additional claims dealt with the weight and hours-of-labor qualifications for certain jobs in defendant's plant. These qualifications are invalid under the Act, according to the plaintiff's contention. The defendant does not seriously argue otherwise.[18] Any layoffs suffered by the plaintiff because of the unavailability of certain jobs for bidding by her occurred in the pre-Act period. These restrictions, however, had no adverse effect on the plaintiff and her seniority rights. Continuously from the effective date of the Act until her layoff in January, 1970, she was employed, suffering no layoffs and earning an uninterrupted "company service" record

for such period in the computation of her seniority and fringe benefit rights.[19] Moreover, all designations of any such jobs as male jobs and all weight qualifications therefor were discontinued entirely early in 1969, after the opinion in *Bowe v. Colgate-Palmolive Company* (7th Cir. 1969) 416 F.2d 711, and the change in the regulations by the EEOC and before plaintiff's layoff in January, 1970. Nor is there the slightest suggestion in the record or reason to believe that there is any threat that such qualifications, abandoned by the defendant in 1969, will be reinstituted. In fact, as the evidence clearly reveals, the defendant has been attentive to any changes in either the regulations or the construction of the law and alert to conform its practices to such changes.

The plaintiff made some point, too, that she had not been considered for promotion to a supervisory position. She offered no real proof of her qualification for such promotion nor did she suggest in her testimony that she had ever applied for promotion. Such evidence as there is in the

---

**18.** Following the enactment of Title VII and in anticipation of its effective date, the defendant, according to the record, sought to amend its employment rules to conform. There was uncertainty at the time even on the part of the EEOC itself whether Title VII overrode state weight and hours-of-labor statutes regulating the employment of females. There was a general feeling, shared at least tentatively by the EEOC, that Title VII did not invalidate such laws. The weight and hours-of-labor regulations adopted by the defendant and inaugurated, it was asserted, represented the defendant's attempt to satisfy the requirements of both the federal and state law. There was some inconsistency, however, because the defendant operated plants in both Ohio and North Carolina; and it sought, according to its contention, to develop regulations which would comply with the laws of either state and thus to have uniform employment rules in all plants. These rules so adopted were thought to comply with the formal guidelines or regulations issued in 1965 by the EEOC itself, which specifically provided that "restrictions on lifting weights will not be deemed in conflict with Title VII except where the limit is set at an unreasonably low level which could not endanger women; and that hours-of-labor statutes would be considered ordinarily "as a basis for application of the bona fide occupational qualification excep-

tion." 29 C.F.R. § 1604.1(c). In late 1968, however, the EEOC reversed its position on these two points and it was because of this change in the position of EEOC and the decision in *Bowe v. Colgate-Palmolive Company* (7th Cir. 1969) 416 F.2d 711, that the defendant claims it abandoned in 1969 its employment rules on weight and hours-of-work requirements for female employees. The changes in the regulations of the EEOC between 1965 and late 1968 are fully discussed in Note, 61 Cornell L.Rev. 460 at 465–7 (1976); *Williams v. General Foods Corp.* (7th Cir. 1974) 492 F.2d 399, 402–3; *Kober v. Westinghouse Electric Corporation* (3d Cir. 1973) 480 F.2d 240, 243–5; *Vogel v. Trans World Airlines* (M.D.Mo.1970) 346 F.Supp. 805, 809–11. *See, also,* § 2000e–12, 42 U.S.C.

**19.** There is another reason for finding this claim without merit. At the time of her layoff in January, 1970, the plaintiff was offered a substantial number of "heavy" jobs. She refused and refused by her own explanation because she doubted her ability to perform these jobs. It would thus appear unlikely that, had a "heavy" job been open to her between 1965 and 1970, the plaintiff would have accepted one.

record on this point is represented by the explanation offered by the defendant why the plaintiff had not been given consideration for a supervisory position. This explanation consisted of undisputed testimony, concurred in by the plaintiff herself, that the plaintiff was unable to work amicably with her fellow employees and had been embroiled in difficulties with them. This was a perfectly valid reason for not considering plaintiff for a supervisory position. There is nothing in the record that would justify an inference that the reason was pretensive or pretextual; nor did the trial court find that it was pretensive. The defendant accordingly met any burden that may have rested on it for sustaining its failure to promote the plaintiff. *Cf., McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 803–4, 93 S.Ct. 1817, 36 L.Ed.2d 668. Nor did the plaintiff apparently consider that she had been treated unfairly or discriminately in this particular, for she did not in any one of her five charges assign this as a complaint. It is highly questionable under these circumstances that this issue was properly before the court.[20] We have recently held that a suit under Title VII "may encompass only the 'discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge.'" *King v. Seaboard Coast Line Railroad Company* (4th Cir. 1976) 538 F.2d 581, 583 (decided April 29, 1976).

The final peripheral issue concerns a test required by the defendant of employees seeking certain specialized work in three departments at defendant's plant. This test was inaugurated in 1970. Until 1970 all persons employed in these departments were required to take two other tests. These earlier tests, however, were discontinued in 1970 in favor of a new simplified mechanical aptitude test. This new test, which was required of all employees seeking to transfer to these departments after 1970, did not have any "discriminatory impact" on female applicants; on the contrary, the testimony shows that percentagewise more females passed the test than males. And at the time of trial the employees in at least one of these departments had more female employees than male employees. In that situation, there was no obligation on the defendant to validate this new test. The burden of establishing the job-relatedness of a test arises "only after the complaining party or class has made out a prima facie case of discrimination—has shown that the tests in question select applicants for hire or promotion in a racial pattern significantly different from that of the pool of applicants." *Albemarle Paper Co. v. Moody* (1975) 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280.[21] The trial

---

**20.** In *Oatis v. Crown Zellerbach Corp.* (5th Cir. 1968) 398 F.2d 496, 499, the Court said:

"We thus hold that a class action is permissible under Title VII of the Civil Rights Act of 1964 within the following limits. First, the class action must, as it does here, meet the requirements of Rule 23(a) and (b)(2). Next, the issues that may be raised by plaintiff in such a class action are those issues that he has standing to raise (i. e., the issues as to which he is aggrieved, see § 706(a), supra), and that he has raised in the charge filed with the EEOC pursuant to § 706(a)."

*See, also, Equal Employment Opportunity Commission v. General Electric Company* (4th Cir. 1976) 532 F.2d 359.

**21.** This was recognized by the trial court, which, in a colloquy with plaintiff's counsel, stated that "unless the test as administered shows that women flunk more than men, there is no question presented about the testing."

*See, also,* Cooper and Sobol, *Seniority and Testing Under Fair Employment Laws,* 82 *Harv.L.Rev.* 1598, 1659. The authors add (p. 1660):

"Psychologists have criticized this test by claiming that it will not predict job performance, but there is evidence that the criticism may be inaccurate. More important, this criticism is not relevant to the equal employment issue. So long as the test does not prefer whites over blacks or any other protected minority group, it does not violate equal employment requirements. If an employer hired every fifth applicant on a random basis, his selection procedure would be arbitrary and might not relate well to job performance, but it would not deny equal employment opportunity * * *."

This is so because the Act itself very specifically declares that a party is only entitled to relief if his discharge or layoff or loss of any right was because of "discrimination on

court, however, found the new test improper because the then existing employees in those departments had not been required, as a condition of retaining their jobs, to take the new, less exacting tests. If the existing employees had been given their jobs without any testing or after taking less "stringent" tests, we would find this argument appealing, but all these employees had secured their positions after successfully completing two tests, considerably more exacting and broader in scope than the test presently required (i. e., the simplified mechanical test). It would obviously be unfair to impose on these employees, who had qualified for their jobs by taking both the Modified Alpha and Bennett Mechanical Tests, to condition their continued right to their jobs on their taking the new simplified mechanical test. Nor do the guidelines established by the EEOC require such unfair treatment. These guidelines expressly provide that only when older employees have "qualif[ied] under less stringent selection standards [as] previously enforced" will the validity of the new tests depend on whether these older employees have qualified under the new tests. 29 C.F.R. § 1607.-11. Such guidelines, while not binding on the courts, are to be given great deference.[22] We find them reasonable and fair and consonant with the purposes of Title VII et seq. Since obviously the new test was "less stringent" than the earlier tests, under which these employees qualified for their jobs, there was no basis in the record for holding that unless such employees again qualified by taking the new test, no subsequent applicant for employment on such jobs could be required to take the new test, which admittedly had no discriminatory impact.

We come now to the plaintiff's individual claim that the layoff in 1970 resulted from an improper deduction in her "company service" record of time lost due to alleged sex-discriminatory layoffs in the pre-Act period of her employment. Under the defendant's seniority system, "company service" is an employee's period of employment, less layoffs. Such "company service" fixes the priority rights of employees in bidding for other job vacancies in cases of layoff and in qualifying for certain fringe benefits. It is obviously of great value to an employee;[23] it has been well characterized as an employee's "personal investment in a job."[24] Plaintiff's claim is that the defendant, by following a discriminatory practice of limiting female employment to certain job classifications, narrowed the opportunity of its female employees to bid on an equal basis with male employees for job vacancies in the plant, thereby causing a female employee to suffer generally more layoff time than a comparably qualified male employee. To illustrate the effect of such practice in her case, she points out that she suffered five layoffs between 1952 and July 2, 1965, whereas males employed subsequent to the plaintiff suffered no layoff time prior to January, 1970. These layoffs of the plaintiff changed the beginning date of her "company service" from 1952 to 1955, and it was this latter date she was required to use in bidding for job vacancies.

The defendant does not dispute the method of calculating "company service" as claimed by the plaintiff. It does suggest that all of plaintiff's layoffs prior to January, 1970, took place before July 2, 1965, the effective date of Title VII and that such layoffs, whether discriminatory or not, were not illegal at the time. It does not follow, however, that, though they occurred before the effective date of the Act, these layoffs may not result in a violation of the Act if they have an adverse effect on

---

account of race, color, religion, sex, or national origin * * *." § 2000e–5(g), 42 U.S.C.
Cf., Washington v. Davis (1976) —— U.S. ——, 96 S.Ct. 2040, 48 L.Ed.2d 597, for comparison of rule under due process and under Title VII.

**22.** Griggs v. Duke Power Co. (1971) 401 U.S. 424, 433–4, 91 S.Ct. 849, 28 L.Ed.2d 158.

**23.** For a pertinent statement of the importance of such standing, see Franks v. Bowman Transportation Co., Inc., supra, 424 U.S. 747, at pp. 766–768, 96 S.Ct. 1251, 1265–1266.

**24.** Note, Remedies: Retroactive Seniority—The Courts as Personnel Director, 29 Okl.L.Rev. 215 (1976).

the employee's seniority rights after the Act became effective. The bellwether authority in this area is the oft-cited case of *Quarles v. Philip Morris, Incorporated* (E.D. Va.1968) 279 F.Supp. 505, 517–8. That case held (a) that only a *bona fide* seniority system was protected under the Act, (b) that "one characteristic of a *bona fide* seniority system must be lack of discrimination," and (c) that a seniority system, however neutral facially, is not a *bona fide* seniority system if it "has its genesis in racial [or sex] discrimination," whether pre-Act or post-Act.[25] Accordingly, *Quarles* established that any seniority system which carried over into the post-Act period the effects of a pre-Act discriminatory job assignment policy disadvantaging a black [or a female] in seniority rights was not a *bona fide* seniority system under the Act and had to be adjusted to remedy that disadvantage. This decision has been consistently followed by this Circuit[26] and its ruling has been adopted in repeated decisions of other Circuits since[27] and has been approved by the legal writers.[28] It is conceded by the defendant that in the pre-Act period, the jobs in certain departments were reserved exclusively for male employees and that in periods of layoff only qualified male employees could bid on the jobs in these departments. Such a system obviously gave the male employee a preferred opportunity to protect his "company service" over the female employee. This more extensive opportunity in bidding for vacancies during layoffs on the part of male employees was a discrimination against female employees, and because that discrimination was carried over in the operation of the post-Act seniority system it tainted such post-Act system. To such extent as the plaintiff was prejudiced thereby in the computation of her "company service" or seniority rights, she is entitled to relief. This the District Court correctly concluded.

 The plaintiff is accordingly entitled to a judgment requiring an adjustment in her "company service" status sufficient to remove the adverse effect of any pre-Act discriminatory layoffs. The District Court left for further determination the extent of such adjustment and the plaintiff's right, if any, to back pay.[29] The District Court,

---

**25.** *Ibid.,* 517.

**26.** *United States v. Chesapeake and Ohio Railway Company* (4th Cir. 1972) 471 F.2d 582, 587–8, *cert. denied* 411 U.S. 939, 93 S.Ct. 1893, 36 L.Ed.2d 401 (1973); *Brown v. Gaston County Dyeing Machine Company* (4th Cir. 1972) 457 F.2d 1377, 1382, *cert. denied* 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972); *Robinson v. Lorillard Corporation* (4th Cir. 1971) 444 F.2d 791, 795, *cert. dismissed* 404 U.S. 1006, 1007, 92 S.Ct. 573, 30 L.Ed.2d 655; *United States v. Dillon Supply Company* (4th Cir. 1970) 420 F.2d 800, 803–4; *United States v. Continental Can Company* (E.D.Va.1970) 319 F.Supp. 161, 166.

**27.** *United States v. T.I.M.E.–D.C.* (5th Cir. 1975) 517 F.2d 299, 315, U.S.Appeal Pending; *United States v. Navajo Freight Lines* (9th Cir. 1975) 525 F.2d 1318, 1324-25; *Pettway v. American Cast Iron Pipe Company* (5th Cir. 1974) 494 F.2d 211, 224; *United States v. N. L. Industries, Inc.* (8th Cir. 1973) 479 F.2d 354, 360–1, where many of the authorities are cited; *United States v. International Bro. of Elec. Wkrs., L.No. 38* (6th Cir. 1970) 428 F.2d 144, 150, *cert. denied* 400 U.S. 943, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970); *Jones v. Lee Way Motor Freight, Inc.* (10th Cir. 1970) 431 F.2d 245, 248, *cert. denied* 401 U.S. 954, 91 S.Ct. 972, 28

L.Ed.2d 237 (1971); *United States v. Bethlehem Steel Corporation* (2d Cir. 1971) 446 F.2d 652, 660–1; *Schaefer v. Tannian* (E.D.Mich.1975) 394 F.Supp. 1136, 1142. *Cf. however, Jersey Cen. Pow. & LI. Co. v. Local Un. 327, etc. of I.B.E.W.* (3d Cir. 1975) 508 F.2d 687, 706–7, U.S. Appeal Pending; and *Waters v. Wisconsin Steel Works of Int. Harvester Co.* (7th Cir. 1974) 502 F.2d 1309, 1319–20, U.S.Appeal Pending.

**28.** *See,* Cooper & Sobol, *supra,* at p. 1617 *et seq.;* and Sheeran, *Title VII and Layoffs Under "Last Hired, First Fired" Seniority Rule,* 26 *Case West.Res.L.Rev.* 409, 449 *et seq.* (1976).

**29.** At the time of her layoff in 1970 and again in 1973, the plaintiff had been offered a large number of jobs in the plant, some of them at least being jobs theretofore classified as "heavy" jobs. She refused all such proffers. She would justify her refusal of those which might be classified as "heavy" on the ground that she was told that, if she chose one of such jobs and was unable to do the job, she would be "fired." We have been pointed to no evidence where she justified her refusal of the offer of those jobs which were not classified as "heavy." So far as the rule with reference to "heavy" jobs of which she complained, it did

however, did not confine its ruling to plaintiff's individual claims, but proceeded as if it were dealing with a class action, despite the representations in the record and the limitation in discovery imposed on the defendant by the ruling that the action was purely an individual suit, to grant relief which required a general re-arrangement of the defendant's entire seniority system, *as applied to both male and female employees,* including new rules for determining vacancies and supervisory promotions, even though it is well settled that a finding of either racial or sex discrimination in the establishment or operation of a seniority system, even in a class action, requires that such seniority system "be modified only as it applies to those employees who were previously subjected to discrimination, only to the extent necessary to remove the elements perpetuating that discrimination, and only for a limited period of time. Such a system should be allowed to apply unabated to all employees, black and white, against whom the employer did not discriminate." *Stevenson v. International Paper Co., Mobile, Alabama* (5th Cir. 1975) 516 F.2d 103, 118.[30] The additional relief provided in the District Court's order, going beyond that to which plaintiff was properly entitled, was inappropriate and the order of the District Court should be modified to eliminate such provisions and terms. What we have said would apply to the inappropriate injunction against weight and hours-of-work rules of the defendant, such rules having been abandoned in 1969 and there being no reasonable basis to assume that they will ever be reinstituted.

The judgment below should accordingly be modified to include relief only in plaintiff's seniority rights as represented by the calculation of her "company service" records to such extent as she may show she was prejudiced as a result of defendant's policy of reserving certain jobs for male employees in the pre-Act period, and all other relief granted in the order of the District Court herein, should be vacated, other than a recognition of the right of the plaintiff to costs and an award of attorneys' fees. The cause is accordingly remanded for the entry of a decree in accordance with the foregoing and for such other proceedings as may be consistent herewith.

REMANDED FOR ENTRY OF DECREE IN ACCORDANCE WITH FOREGOING.

---

not appear to be disputed that the rule, both for male and female employees, was that an employee who took such a job and failed to perform satisfactorily would be fired. In imposing such a standard on the plaintiff in connection with her right to bid for so-called "heavy" jobs, the defendant was imposing no different standard than that it imposed on male employees. *See, Williams v. American Saint Gobain Corp., Okmulgee, Okl.* (10th Cir. 1971) 447 F.2d 561, 568. Assuming this to be true, there would seem to be no impropriety on grounds of sex discrimination in the requirement, the exaction of which the plaintiff claims as an excuse for refusing these job offers. Whether such offers of other jobs, some "heavy" and some not, operated as a bar to a right to back pay we leave, as we have said, to further proceedings in the District Court. See § 2000e–5(g), 42 U.S.C.: "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. * * *" *See, also, Williams v. American Saint Gobain Corp.* at pp. 567–8, and *United States v. Bethlehem Steel Corporation* (2d Cir. 1971) 446 F.2d 652, 665–6.

30. This conclusion is supported by the recent case of *Franks v. Bowman Transportation Company, Inc., supra,* 424 U.S. 747, 770–779, 96 S.Ct. 1251, 47 L.Ed.2d 444, where the Supreme Court construed Title VII to allow seniority relief, in a class action, only for identifiable victims of the illegal hiring discrimination.