Joseph C. SPENCER, Plaintiff,

v.

GENERAL ELECTRIC COMPANY, Defendant.

Civ. A. No. 74–174.

United States District Court, W. D. Virginia, Roanoke Division.

April 5, 1977.

George W. Harris, Jr., Roanoke, Va., for plaintiff.

William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., counsel for defendant.

## OPINION AND ORDER

DALTON, District Judge.

Plaintiff instituted this employment discrimination action on September 16, 1973, under the provisions of 42 U.S.C. §§ 2000e et seq. The complaint alleges that plaintiff was employed by defendant from November, 1955, until his discharge on November 16, 1973. Plaintiff asserts that, solely on account of his race, he was wrongfully and maliciously dismissed and consistently passed over for promotion to managerial positions despite his qualifications and experience. Plaintiff seeks reinstatement, back-pay and interest from November 18, 1973, and punitive damages not in excess of $10,000. Defendant's answer denies that plaintiff was consistently passed over for promotion on account of his race and alleges that plaintiff was dismissed from defendant's employment because of excessive absenteeism and that his discharge was totally unrelated to race. After prolonged discovery, the parties have agreed to submit the case to the Court for decision on the basis of the pleadings, the depositions on file, and the exhibits thereto.

It is not disputed that plaintiff, a black, was employed by defendant at its plant in Salem, Virginia from November, 1955 until his discharge in November, 1973. During that period he received a number of promotions and held several positions, including janitor, conveyor attendant, industrial vehicle operator, packer-shipping, traffic clerk grades 9 and 10, and returned apparatus grade 11, the non-exempt salary position which he held at the time of his discharge. Defendant's Exhibits 1–32 to plaintiff's deposition provide evidence of plaintiff's performance and absenteeism records over the eighteen years of his employment. The employee performance and progress reports dating from 1955 to approximately 1968 generally reflect a good attendance record and adequate job performance. As to qualifications for promotion, the reports contain some reservations. For instance, the 1965 and 1967 performance appraisals indicate that Spencer was weak in the technical aspects of his job and that he did not accept constructive criticism very well.

Beginning with the 1968 performance report, the reports cite an attendance problem on the part of plaintiff. This problem is reflected increasingly in the 1971, 1972 and 1973 appraisals. The performance appraisal dated June 14, 1973, indicates that Spencer's absenteeism was having a significant adverse affect on his ability to perform his job. In the appraisal, plaintiff's supervisor termed Spencer's attendance record "[o]ne of the worst attendance records I have ever seen," which has "cause[d] Joe to lose touch with his job." Specifically, Spencer had missed 23½ days of work during the period from January to June 14, 1973. The report concludes that Spencer fails to meet his job requirements and recommends that he be dismissed unless his attendance improves.

During late 1972 and 1973 plaintiff was given numerous verbal warnings by his supervisors concerning his poor attendance record and resulting inadequate job performance. In discussions with his supervisor, plaintiff admitted that his absenteeism problem may have been related to excessive consumption of alcohol. When plaintiff's attendance failed to improve as a result of these warnings and discussions, on June 15, 1973, defendant directed a letter to plaintiff informing him that "further absenteeism or failure to perform your job satisfactorily will result in termination of your employment." Despite this warning, plaintiff's absences continued at the rate of approximately one day per week, and after numerous other efforts on the part of the Company to improve plaintiff's attendance, he was terminated on November 16, 1973. Defendant's Exhibit 1 indicates that the employee handbook for the Salem G.E. plant warned employees that absence without satisfactory explanation, habitual tardiness or excessive absence could lead to discharge. Defendant's Exhibit 32 reflects that during the period 1968–1974 numerous other G.E. employees were discharged for excessive absenteeism.

Depositions of the plaintiff and six other persons, including several employees of General Electric, have been filed in this

case. As the evidence in the depositions is somewhat in conflict, a brief review is necessary. In his deposition plaintiff disputed that his attendance was as poor as was reflected in the General Electric records contained in defendant's exhibits. Spencer admitted that there were quite a few absences, but contended that most of those absences were due to medical problems and that he notified the Company or attempted to with respect to every absence. Plaintiff also denied admitting that his absences were due to excessive drinking.

Throughout his deposition Spencer made general allegations of racial discrimination. He testified that he was harassed by some of his supervisors during his employment at G.E. He contended further that a number of white employees were laid off or dismissed for absenteeism, but then hired back. This testimony was contradicted by the deposition testimony of Emerson B. Peterson, Manager of Personnel Practices and Services at G.E., who stated that many of those individuals were in fact not discharged. With respect to plaintiff's attendance record, Peterson confirmed that Spencer exceeded his personal leave in 1970, 1971, and 1972 and that he was absent in excess of 22 days during the period June 14, 1973, to November 16, 1973. Peterson also testified that it was company policy to expect reasonable attendance and that employees have been discharged due to excessive absenteeism caused by illness.

Spencer also asserted that certain white individuals, notably Vandergrift and Maxey, were less qualified than Spencer but nevertheless were promoted above him. Plaintiff testified that Maxey was promoted in the two or three year period prior to June, 1976. Spencer was uncertain as to when Vandergrift was promoted, but estimated that it was in 1966. Plaintiff's testimony regarding racial discrimination in regard to promotional practices of the company was disputed by that of Richard Klemas, Materials Manager and third level supervisor of Spencer for a number of years at G.E. Klemas testified that he disagreed 100% with Spencer's views that he was passed over a number of times for promo-

tion because of his race while less qualified whites were promoted. Klemas indicated that Spencer was considered frequently for promotion and that he was given ample opportunities in that regard, and Klemas knew of no instance in which Spencer was discriminated against on the basis of race. Moreover, with respect to dismissal and promotions, there was no competent and credible showing in the evidence that the white individuals allegedly afforded preferable treatment had attendance problems to the degree that Spencer did, or that the individuals who were promoted had similar reservations as to their qualifications for promotion on their personnel records.

In his deposition, Jack East, an inventory control specialist at G.E., stated that he had knowledge of Spencer's absences. East related that Spencer was absent a great deal compared to other employees at G.E. When Spencer reported his absences, he would give as his reason not only illness, but also "his own reasons," which would include business reasons. East knew that Spencer drank, and Spencer admitted to East that he once had to go to the hospital to "dry out." East was not aware of any racial discrimination against Spencer when the latter was either passed over for promotion or dismissed, and he never saw any instance that would be considered racial discrimination against Spencer. East himself had two absences of an extended nature because of surgery, but he maintained regular attendance thereafter.

Other witnesses who were deposed were James Beatty, Alphonos Holland, and David Kibler. Beatty handles personnel for the City of Roanoke. He stated that Spencer applied for and was given a job by the City in 1975. At that time Spencer admitted that he was terminated because of illness and resulting nonattendance, and did not state that he had been terminated because of racial discrimination. Holland is an employee of the Norfolk and Western Railway who is acquainted with Spencer. Holland stated that to his knowledge Spencer was an outstanding G.E. employee, but he professed no knowledge of any particular inci-

dents of racial discrimination involving Spencer. Kibler, an order clerk at General Electric, worked in the same section with Spencer. Kibler admitted that he was discharged in 1972 because of excessive absenteeism caused by illness. However, after he appealed the decision to the NLRB, he was reinstated. Kibler also knew of no racial discrimination involving Spencer.

## FINDINGS OF FACT

The court has reviewed the evidence carefully and now makes the following findings of fact:

(1) Plaintiff was employed by the defendant at its plant in Salem, Virginia, from November, 1955, until his discharge on November 16, 1973.

(2) During his eighteen year period of employment, plaintiff received a number of promotions and held several positions, including janitor, conveyor attendant, industrial vehicle operator, packer-shipping, traffic clerk grades 9 and 10, and returned apparatus grade 11, the position which Spencer held at the time of his discharge.

(3) Spencer was considered frequently for promotion during his tenure and was given ample opportunities in that regard. To the extent that others may have been promoted to jobs in which Spencer was interested, such promotions were made on the basis of merit and not on the basis of race.

(4) Plaintiff had a very poor attendance record at General Electric, particularly during his last several years of employment. Plaintiff's failure to attend work on a regular basis had a significant adverse impact on his ability to perform his job.

(5) During late 1972 and 1973 plaintiff was given numerous verbal warnings by his supervisors concerning his poor attendance record and resulting inadequate job performance. On June 15, 1973, defendant warned plaintiff in writing that further absenteeism or failure to perform his job satisfactorily would result in termination of his employment. Despite these warnings, plaintiff's absences continued at an inordinately high rate until his termination on November 16, 1973.

(6) Plaintiff was terminated on November 16, 1973, because of his poor attendance record and resulting inadequate job performance with General Electric. The discharge of plaintiff was totally unrelated to his race.

(7) Defendant's stated reason for its discharge of plaintiff—excessive absenteeism and resulting inadequate job performance—was not a pretext for discharging plaintiff solely on account of his race, and the reason was not racially discriminatory in its application.

## CONCLUSIONS OF LAW

In rendering conclusions of law in this matter, this Court is guided by decisions of the Supreme Court dealing with employment discrimination actions under Title VII of the Civil Rights Act of 1964. *E. g. Franks v. Bowman Transportation Company*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Albemarle Paper Company v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The purpose of the Act is to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens. As the Supreme Court has stated,

Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has prescribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to

discriminate on the basis of racial or other impermissible classification. *Griggs v. Duke Power Co.*, supra, 401 U.S. at 430–31, 91 S.Ct. at 853.

■ The plaintiff in a Title VII action must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. Where the issue is alleged discrimination against a minority job applicant, the Supreme Court has stated that a prima facie case may be established by showing (1) that the applicant belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *McDonnell Douglas Corp. v. Green*, supra, 411 U.S. at 802, 93 S.Ct. 1817. Of course, as the court noted in *Green*, the facts necessarily will vary in Title VII cases, and the required prima facie proof will accordingly differ from case to case. *Id.* at 802 n.13, 93 S.Ct. 1817. Where the plaintiff has made out a prima facie case, the burden then shifts to the employer to articulate a legitimate non-discriminatory reason for the employee's rejection. For instance, in *Green*, the employer successfully rebutted the employee's prima facie case by showing that it had refused to rehire the plaintiff because of the plaintiff's participation in unlawful conduct against it. Assuming the employer has rebutted the plaintiff's prima facie case, the plaintiff is to be afforded a fair opportunity to demonstrate that the employer's stated reason for rejecting the plaintiff was in fact a pretext for prohibited racial discrimination. *Id.* at 804, 93 S.Ct. 1817.

■ With respect to plaintiff's allegations of racial discrimination in regard to promotions, the Court has found as a matter of fact that Spencer was considered frequently for promotion at General Electric, that he was given ample opportunities in that regard, and that he was not discriminated against on the basis of race. The Court does not feel that plaintiff has carried his burden of showing by competent and credible evidence that he was qualified for the positions for which he allegedly applied. Assuming, however, that plaintiff has met his burden of proving a prima facie case of racial discrimination in regard to promotions at G.E., the Court concludes that defendant has rebutted that presumption by showing that plaintiff was not entirely qualified for the positions which he sought and, in the later years of his employment, that his poor attendance record and resulting inability to perform his job satisfactorily rendered him a poor candidate for promotion. Finally, plaintiff has not shown that defendant's reasons for failing to promote him were a mere pretext for racial discrimination in violation of the Act. The Court therefore holds that defendant has met any burden that may have rested upon it for sustaining its failure to promote plaintiff. See *Nance v. Union Carbide Corp. Consumer Products Division*, 540 F.2d 718, 727 (4th Cir. 1976).

■ The Court now considers plaintiff's allegations that his termination by defendant was racially discriminatory. The *Green* test outlined previously is of doubtful application in a discharge situation. *King v. Yellow Freight System, Inc.*, 523 F.2d 879, 882 (8th Cir. 1975). Assuming that plaintiff has established a prima facie case under Title VII insofar as he has shown that he was a member of a racial minority who was discharged from a job for which he was originally qualified, however, the court concludes that defendant has rebutted that showing by competent proof that plaintiff was dismissed from employment not because of his race, but because of his poor attendance and resulting inability to perform his job satisfactorily. Despite an adequate opportunity to do so, plaintiff has been unable to demonstrate that defendant's assigned reason for discharging him was a pretext for discrimination in violation of Title VII.

Accordingly, judgment is entered for the defendant with each party to bear his or its own costs. The Clerk shall dismiss this case from the docket and forward a certified

copy of this Opinion and Order to counsel of record.