**Ollie E. CHAPPELLE et al., Plaintiffs,**

v.

**E. I. DuPONT DeNEMOURS & CO. et al., Defendants.**

**Civ. A. No. 75–0549–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

July 8, 1977.

Henry L. Marsh, III, Hill, Tucker & Marsh, William H. Bass, III, Richmond, Va., for plaintiffs.

Lewis T. Booker, Hunton & Williams, Virginia Powell, Richmond, Va., Jerry H. Brenner, Wilmington, Del., Parker E. Cherry, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, two retired employees and the representative of a deceased former employee of the defendant, E. I. DuPont de-Nemours and Co., a Delaware corporation with a plant located in Chesterfield County, Virginia, bring this action to redress alleged racially discriminatory employment practices engaged in by the Company. Also named as defendant is Ampthill Rayon Workers, Inc., a labor organization. Plaintiffs seek declaratory, injunctive, and monetary relief. Jurisdiction is alleged under 28 U.S.C. § 1343 and 42 U.S.C. § 2000e–5(f). The matter comes before the Court on plaintiffs' motion to certify this proceeding as a class action pursuant to Fed.R.Civ.P.,

Rule 23(b)(2) and defendants' response thereto.

The three named plaintiffs, Ollie E. Chappelle, Edward B. Thweatt, and James Paul Anthony, filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) on January 8, 1972. The charges alleged that the defendants had assigned certain machinery to a predominantly white work unit. Additionally, the plaintiffs charged that:

" . . . The hiring, transfer and promotional policies and practices of the Company and Union discriminate against me and the other black employees because of race in that solely because of race we are not afforded the same opportunity as similarly situated white employees."

A right to sue letter was subsequently issued and this action was timely filed on October 22, 1975. By order of October 18, 1976, the Court granted defendants' motion to strike the class allegations from the complaint, as it appeared that the EEOC was actively investigating and attempting conciliation with regard to the general allegations concerning alleged racially discriminatory employment practices. Upon reconsideration, the Court on April 7, 1977 vacated its Order of October 18, 1976 denying class certification, and directed the plaintiffs to submit a motion for tentative class certification, addressing themselves to the precise identity of the proposed class and/or subclasses and whether the specific requirements of Rule 23, Fed.R.Civ.P. had been satisfied. Additionally, plaintiffs were to submit a notice to be given to class members in the event the class was certified.

Plaintiffs thereafter moved the Court to certify this proceeding as a class action on behalf of the named plaintiffs and

"All black persons who applied for employment at the defendant company's facilities on or after January 8, 1970; all black persons whether currently employed or no longer employed for any reason, who were employees at the defendant company's facilities on or after

January 8, 1970; and all future black applicants and employees."[1]

In support of their motion, plaintiffs merely state that the various requirements of Rule 23, Fed.R.Civ.P. have been met, without any factual support thereof. In a subsequent memorandum in rebuttal to defendants' opposition to class certification, the plaintiffs erroneously assert that the Court has decided in its April 7, 1977 Order and Memorandum that the named plaintiffs may proceed on behalf of themselves and a class. They further state that "[F]or all functional purposes, the case has always been a class action" and then go on to address the specific requirements of Rule 23, Fed.R.Civ.P.

■ Contrary to plaintiffs' assertions, the Court has never certified this action as a class action. While suits for violations of Title VII are often by their very nature appropriate class actions because the alleged discrimination sought to be remedied is based on class characteristics such as race or sex,[2] it is well settled that Title VII plaintiffs are not exempted from satisfying the requirements of Rule 23, Fed.R.Civ.P. *East Texas Motor Freight System, Inc. v. Rodriquez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Nance v. Union Carbide Corp.,* 540 F.2d 718, 722–23 (4th Cir. 1976); *Doctor v. Seaboard Coast Line R.R. Co.,* 540 F.2d 699, 706 (4th Cir. 1976). The burden is on the plaintiff to show that there is a class and that he or she is a proper representative of that class. A plaintiff does not qualify as a representative "merely because of his or her race or because he designates his action as a class action." *Doctor v. Seaboard Coast Line R.R. Co., supra* at 706.

■ In determining whether the plaintiff has met his or her burden, the Court may look to the pleadings, but the determination should usually be predicated on more information than the complaint itself provides, as, for example, affidavits or relevant discovery. *Doctor v. Seaboard Coast Line R.R. Co., supra* at 707. *See also* 7A, Wright & Miller, *Federal Practice and Procedure,* § 1785 at p. 131. Bearing these guidelines in mind, the Court proceeds to an examination of the extent to which plaintiffs in this case have satisfied the requirements under Rule 23(a), Fed.R.Civ.P.[3]

The degree to which the numerosity, commonality of questions of law and fact, typicality of claims, and the adequacy of representation is satisfied is for the most part, a function of the size and scope of the claims plaintiffs seek to litigate.[4] Plaintiffs in this action challenge the defendants' hiring, assignment, promotion, transfer, seniority, training, compensation policies and practices which allegedly restrict and maintain blacks in the lowest level, lowest paying, and least desirable jobs at the defendant company's Chesterfield County plant. As such, the action constitutes " 'an across-the-board' attack on all discriminatory actions by defendant." *Briggs, supra* at 374; *Barnett v. W. T. Grant Co.,* 518 F.2d 543, 547 (4th Cir. 1975) citing *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5th Cir. 1969).

*Numerosity*

As of December 30, 1975, there were 486 current black employees at the defendant

---

1. This proposed class is narrower than the class suggested in plaintiffs' complaint as there were no time limitations in the latter. The currently proposed class includes applicants and employees of the company on or after January 8, 1970, two years prior to the plaintiffs' EEOC charges which were filed on January 8, 1972.

2. *See Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719 (7th Cir. 1969); *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 499 (5th Cir. 1968).

3. Rule 23(a) provides:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

4. *See Briggs v. Brown & Williamson Tobacco Corp., Inc.,* 414 F.Supp. 371 (E.D.Va.1976).

company and in 1973 and 1974, alone, there were approximately 3800 black applicants for employment. Based on these figures, the Court is satisfied that the class is so numerous that joinder of all members is impracticable.

### Commonality of Legal and Factual Issues

There are questions of law and fact common to the class, regarding the alleged racially discriminatory employment practices engaged in by the defendants, including hiring, assignment, promotion, transfer, seniority, training, and compensation. These questions are common in that their resolution does not depend on the facts of any class member's particular claim, but depends rather on the evidence presented taken as a whole.

### Typicality

Defendants contend that the named plaintiffs cannot satisfy the typicality prerequisite because the facts out of which their complaint arose are peculiar to them and unlike any of the claims asserted with regard to the class members. Specifically, defendants contend that the named plaintiffs sole complaint is that a new crane purchased by the defendant company was, with the defendant union's acquiescence, assigned to the predominantly white Works Engineering Department rather than the predominantly black Labor and Transportation Department where the plaintiffs worked, thereby discriminating against the plaintiffs with regard to job assignments and wage benefits because of their race. Were the defendants' contention accurate, they would be correct in their assertion that plaintiffs' claims are not typical of the class they seek to represent. However, it is clear from both the complaint filed in this action and from the charge filed with the EEOC that each of the plaintiffs complain that the "hiring, transfer, and promotional policies

and practices of the Company and Union discriminate against *me* and the other black employees." (Emphasis added).

Plaintiff Chappelle was hired January 9, 1952, laid off from 1956 until 1962, and worked continuously from 1962 until he retired due to a medical disability in 1975. Thus, he was within the defendant company's employ for a period of some 23 years. During his employment he was a member of the defendant union and also served as a union steward. Plaintiff Thweatt was hired September 16, 1937, and retired on January 1, 1974, working within the defendant company's employ for a period of approximately 36 years. Plaintiff Anthony was hired August 21, 1936 and died in 1974 during the pendency of the EEOC's investigation of the plaintiffs' charges, working for an approximate total of 37 years. Beatrice J. Anthony, sues as the administrator of the decedent's estate. All three of the named plaintiffs worked almost exclusively within the Labor and Transportation Department of the defendant company's Products Section, a predominantly black, lower level and lower paying section within the defendant company's employment structure. They allege that despite the length of their employment with the defendant company, they were unable to progress within the Company structure due to a number of racially discriminatory employment practices already enumerated. Their alleged injuries are thus typical of the injuries they allege on behalf of the class they seek to represent. As persons allegedly aggrieved by some of the employment policies and practices under attack, plaintiffs have "demonstrated a·sufficient nexus[5] to enable [them] to represent others who have suffered from different actions motivated by the same policies." *Barnett v. W. T. Grant Co., supra*, 518 F.2d at 548; *Long v. Sapp*, 502 F.2d 34, 43 (5th Cir. 1974); *Briggs v. Brown & Williamson Tobacco Corp., Inc., supra*.[6]

---

**5.** The word "nexus" taken from *Huff v. N. D. Cass Company of Alabama*, 485 F.2d 710, 714 (5th Cir. 1973) is defined as a "tying or binding together, a fastening, joining, an interlacing, entwining, clasping". *Wells v. Ramsay, Scar-*

lett & Company, Inc., 506 F.2d 436, 437 n.3 (5th Cir. 1975) citing from A Latin Dictionary, Lewis and Short, Oxford University Press, p. 1205.

**6.** *See also, East Texas Motor Freight System, Inc. v. Rodriquez, supra*, where the Supreme

*Adequacy of Representation*

Since a Title VII action is in the nature of a Rule 23(b)(2) action, there are no provisions for individual class members to "opt out" of the class and the rights of all members will be determined in any such action. *See Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239 (3rd Cir. 1975). Therefore, unless the class representatives are in a position to adequately represent the interests of absent members, the due process rights of those members are placed in serious danger.[7] Whether a plaintiff is an adequate representative is a question of fact to be determined by all the circumstances of a particular case, *Wetzel, supra* at 247, but a number of factors are, in the Court's opinion, relevant to the issue.

The class representative must have a sufficient stake in the outcome of the class action to assure that he or she will fully litigate the issues on which the class claim depends. On this point, the defendants contend that retired employees do not have a sufficient stake or interest in representing either those class members who applied for employment on or after January 8, 1970, but who were never hired, or those class members who have allegedly been subject to discriminatory practices from the date of plaintiffs' retirement to the present. However, the plaintiffs in this case worked for the defendant company for an average of 32 years each, and are thus familiar with the defendants' practices over a long period of time, and have shown a sufficient nexus between the discriminatory practices to which they were allegedly subject and the range of practices, including hiring, to which class members were allegedly subject.[8] Moreover, there has been no showing or even suggestion that the defendants'

practices have changed since the plaintiffs retired in 1974 and 1975, so as to disqualify them as representatives of the class. Former employees who are familiar with the defendants' employment practices may well be better situated than either job applicants or current employees to present an intelligent and strongly adverse case against the defendants' alleged discriminatory practices since they are not under the same coercive influences from the employer or union. *Wetzel, supra* at 247; *Dickerson v. United States Steel Corp.,* 11 EPD ¶ 10,943 (D.C.Pa. 1976). The Court is satisfied that these named plaintiffs have a sufficiently broad and recent enough experience with the defendants' practices to fairly and adequately represent the class.

A conflict of interest between the class representative and the members of the class may preclude a class action. *Crockett v. Virginia Folding Box Co.,* 61 F.R.D. 312, 318 (E.D.Va.1974). But here there has been no suggestion that the type of relief sought by the named plaintiffs would in any way conflict with the interests of the class.

The diligence with which the class representative proceeds in prosecuting the action is another factor for consideration. The plaintiffs herein appear to have proceeded with due diligence throughout, beginning with the filing of their charge with the EEOC and their subsequent initiation of this action.

Finally, adequate representation requires that the plaintiffs' attorney must be qualified, experienced and generally able to conduct the proposed litigation. *Wetzel, supra* at 247. The Court is fully cognizant of counsel's capabilities in prosecuting actions of this type and is satisfied that this requirement is met.[9]

---

Court recently reaffirmed the principle that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members" [Citations omitted]. 97 S.Ct. at 1896.

**7.** For a good discussion of these potential dangers *see* Judge Godbold's special concurrence in *Johnson v. Georgia Hwy. Express, Inc.,* 417 F.2d 1122, 1125–27 (5th Cir. 1969), cited in *Barnett v. W. T. Grant Co., supra* at 547 n.4.

**8.** Plaintiff Chappelle worked a total of 23 years, plaintiff Thweatt a total of 36 years, and plaintiff Anthony a total of 37 years.

**9.** It should be noted, however, that plaintiffs' counsel has been less than diligent in providing the Court with the kind of factual information and legal reasoning necessary to determine both the scope and the appropriateness of the class after some eighteen months of discovery.

Having considered the plaintiffs' stake in the outcome of the class action, the absence of any conflict of interest between the plaintiffs and the class, the diligence with which the plaintiffs have proceeded in this action, and the qualifications of the plaintiffs' counsel, this Court is satisfied that the named plaintiffs will fairly and adequately protect the interests of the proposed class.[10]

Having met the four prerequisites to a class action enumerated in Rule 23(a), Fed.R.Civ.P., the plaintiffs may maintain this suit as a class action under Rule 23(b)(2), Title VII actions being particularly suited for (b)(2) treatment. *See Wetzel, supra* at pp. 250–53. The class so certified shall consist of: (a) all black persons who applied for employment at the defendant company's Chesterfield County facilities on or after January 8, 1970; [11] and (d) all black persons, whether currently employed or no longer employed, who were employees at the defendant company's Chesterfield County facilities on or after January 8, 1970. The plaintiffs will be directed to give appropriate notice to class members.[12]

An appropriate order will issue.

---

**10.** Although the administrator of the deceased plaintiff's estate is not an adequate representative for obvious reasons, the other two named plaintiffs will suffice as class representatives.

**11.** The defendant union, Ampthill Rayon Workers, Inc., contends that a class including applicants is too broad as against them, since the hiring practices at the plant are solely within the control of the defendant employer, DuPont. Such a determination must await a trial on the merits of the plaintiffs' class claims and is inappropriate at this stage.

**12.** The portions of the plaintiffs' proposed notice which refer to procedures whereby class members can exclude themselves from the class are inappropriate in a Rule 23(b)(2) class action under Title VII. *See Wetzel v. Liberty Mutual Ins. Co., supra* at 252–53. It is important for class members to be on notice that they *will* be bound by any judgment entered by this Court, and may intervene through counsel of their own choice, should they so desire.