Yuna Mae TAYLOR

v.

Col. William D. GILLIS, Commander, U.
S. Army Support Center and Mjr. Gen.
Abraham J. Dreiseszun, Commander,
Defense Personnel Support Center.

Civ. A. No. 73-2913.

United States District Court,
E. D. Pennsylvania.

Dec. 18, 1975.

Jeffrey B. Albert, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Gary Tilles, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM

GORBEY, District Judge.

Plaintiff is a black female currently employed at the Army Support Center, in Philadelphia, Pennsylvania. Plaintiff has brought this action against the federal government, claiming that she has been discriminated against in her employment by the government on the basis of race. Plaintiff claims a cause of action under 42 U.S.C. § 2000e–16, 42 U.S.C. § 1981, the Fifth Amendment to the United States Constitution, and Executive Orders No. 11246 and No. 11478.

At the direction of the court, plaintiff submitted a proposed final pretrial order to the government on November 3, 1975. Within this order, plaintiff submitted her proposed findings of fact. From a review of these proposed findings of fact, it is readily apparent that it is plaintiff's intention at trial to prove that the government has been discriminating against her since June, 1967. Plaintiff's proposals outline five separate complaints which she intends to introduce evidence in support of at trial. In response to this proposed final pretrial order, the government has filed a motion for a pretrial order limiting plaintiff's testimony and exhibits to be offered at trial. The government's motion deals with whether or not this court has jurisdiction over the five separate complaints, each of which involves facts which occurred in five different years.

In determining jurisdiction under any of the bases alleged, the issue of sovereign immunity must be considered.

"One cannot sue the United States without its consent and a court has no jurisdiction of a suit against the United States to which it has not consented."

Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969).

A civil action against the federal government must be specifically authorized by law and plaintiff must be able to point to a constitutional provision, law or treaty which by its terms waives sovereign immunity and gives the consent of the government to be sued.

"It is well settled that a waiver of sovereign immunity must be specific and explicit; such a waiver cannot be implied by construction of an ambiguous statute." United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; Penn v. Schlesinger, 490 F.2d 700 (5th Cir. 1973).

■ The Fifth Amendment and the Executive Orders clearly do not express an explicit waiver of sovereign immunity or establish a procedural remedy. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 did expressly waive sovereign immunity. Before filing suit in a district court, however, under the Civil Rights Act of 1964, a plaintiff must have exhausted his or her administrative remedies.

■ Plaintiff's final alleged basis of jurisdiction is 42 U.S.C. § 1981. It is settled law that a federal employee plaintiff does have jurisdiction under § 1981 in a discrimination suit against the government. What is not settled is whether or not before filing suit in the district court alleging § 1981 as a basis of jurisdiction a federal employee must first exhaust his or her administrative remedies, as he or she must under 42 U.S.C. § 2000e–16. This is one of the two main issues of this case.

■ Plaintiff claims that exhaustion of remedies is not required in a case under § 1981. As authority she cites Young v. I.T.T., 438 F.2d 757 (3d Cir. 1971); Johnson v. Railway Express

Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716 44 L.Ed.2d 295 (1975) and numerous other cases, all of which, however, involved employment discrimination in the private sector. A quick review of these cases will reveal that there is no doubt that a private sector employee is not required to first exhaust his administrative remedies before filing suit under § 1981. However, since plaintiff here is a federal employee suing the federal government, these cases are not determinative of the issue herein.

■ Since the Third Circuit has not decided this point, I will refer to other circuits and to other district court opinions. Within our own circuit, Judge Bechtle, on September 27, 1974, in Ficklin v. Sabatini, 383 F.Supp. 1147 (E.D. Pa.), stated:

"The court is further convinced that, in order for a Federal employee to maintain a valid cause of action under § 1981, all available administrative remedies must first be exhausted. An independent cause of action challenging alleged racial discrimination in Federal employment may properly be brought under § 1981 only after the administrative remedies established by 42 U.S.C. § 2000e–16 and the Commission's regulations promulgated thereunder have been sufficiently exexhausted."

In a decision decided earlier this year in the District Court of Maryland, Judge Young, citing a Fifth Circuit decision, stated:

"Only one circuit has considered the relationship between Title VII and section 1981 insofar as employment discrimination complaints against the federal government are concerned. In an en banc decision, Penn v. Schlesinger, 497 F.2d 970 (5th Cir. 1974), rev'g, 490 F.2d 700 (1973), the Fifth Circuit concluded that exhaustion of Title VII administrative remedies is required even where the plaintiff successfully skirts sovereign immunity with a section 1981 action."

Wright v. National Archives and Rec-

*ords Service,* 388 F.Supp. 1205, 1209 (D.Md.1975).

The plaintiff has not convinced me that I should disagree with the three above-mentioned decisions. Therefore, I hold that unless plaintiff has exhausted her administrative remedies for each claim, she will not be able to pursue that claim at trial. What I must finally determine then is for which complaints has plaintiff exhausted her administrative remedies.

 Plaintiff states in her second proposed conclusion of law that she has exhausted federal government administrative remedies on two occasions, in 1969 and in 1973. Therefore, relying on plaintiff's proposals and my previous determination concerning § 1981, it is determined that plaintiff is limited at most to these two complaints. Further, since plaintiff's first exhaustion of administrative remedies occurred many years ago, she cannot at this late date appeal that complaint to the district court. Therefore, plaintiff is limited to one cause of action, and that is the one for which she filed a claim of discrimination with the EEOC on December 13, 1972. In the complaint that she filed on December 13, 1972, plaintiff stated that her reasons for believing she was discriminated against were that:

> "expired bulletin of 30 June 1974 (see attached enclosure) used to adjust my wages and a white non-career employee, who I bumped, received $421 increase when reinstated. Reduction in force, by no fault of my own and being black, I will have to wait five years and seven months for an increase in salary."

It is the government's contention that all plaintiff was complaining about was that when she received notice of her salary adjustment as a result of a prior reduction in force, she felt that her pay rate had been improperly set. It is plaintiff's contention that this complaint encompassed charges of racial discrimination going back to and including the date of a reduction in force in 1970.

From reading only plaintiff's complaint, it would appear that she was charging racial discrimination stemming from the reduction in force. When this complaint went through the government's administrative procedure, however, the government never considered whether or not plaintiff was discriminated against by the reduction in force. All the government considered was whether or not plaintiff's pay rate had been set correctly in November, 1971. At this date, plaintiff no longer contends that it was set incorrectly. In support of plaintiff's contention that the government should have considered her earlier allegation of discrimination, she cites a Sixth Circuit decision in 1971, which states:

> " . . . this Court has recognized that Title VII of the Civil Rights Act of 1964 should not be construed narrowly. *Blue Bell Boots, Inc. v. Equal Employment Opportunity Commission,* 418 F.2d 355, 358 (6th Cir. 1969). In addition, charges of discrimination filed before the EEOC will generally be filed by lay complainants who are unfamiliar with the niceties of pleading and are acting without assistance of counsel. *Graniteville Company v. Equal Employment Opportunity Commission,* 438 F.2d 32 (4th Cir. 1971). As a result, federal courts should not allow procedural technicalities to preclude Title VII complaints. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970). When this approach is applied to the determination of whether a judicial complaint encompasses the EEOC charge, it is clear that the exact wording of the charge of discrimination need not 'presage with literary exactitude the judicial pleadings which may follow.' Id at 465. Rather, the complaint in the judicial proceedings is only limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. Id at 466; *King v. Georgia Power Co.,* 295 F. Supp. 943 (N.D.Ga.1968)."

*Tipler v. E.I. DuPont deNemours and Co.*, 443 F.2d 125, 131 (6th Cir. 1971).

I consider this a very sound decision in that it states that the federal courts should hear the complaint which the complainant intended to file when he filed his or her complaint with the EEOC and not limit its jurisdiction if the complainant inartfully worded the initial complaint. I believe also that if plaintiff had in fact made a charge in her complaint of racial discrimination which was not acted upon in the administrative procedure, I feel she should at this point be able to proceed with that complaint at this time in district court. However, the facts are not as plaintiff would now have us believe.

In her complaint of December 13, 1972, plaintiff stated that the date on which the most recent alleged discrimination took place was November 7, 1971. This was the date when plaintiff was promoted from a GS–4 to a GS–5 Supply Clerk with no change in salary. When she realized she would get no increase in salary, she requested advice and counsel concerning salary adjustments. Plaintiff submitted a "request for personnel information" on December 8, 1972. Nowhere in this request did she claim that she was discriminated against in the reduction of force. She only claimed discrimination in that her pay scale was improperly adjusted when she was promoted. On February 1, 1973, plaintiff submitted an affidavit in support of her December 13th complaint of discrimination. This affidavit stated that she had "been discriminated against due to race for the following reasons: Comparing the two cases of career and non-career employees and reading the updated regulations, chapter 531 of the FPM, I feel that injustice was committed as I was furnished an expired Bulletin by Mr. John Dornsife. He said he had adjusted my pay based on this bulletin. For more complaint information, see my case of discrimination, dated 13 December, 1972." This affidavit says nothing about discrimination due to a reduction in force. It deals only with the manner in which plaintiff's pay was set. The other case to which she had referred involved how another employee's pay scale had been set. As aforesaid, plaintiff has now conceded that her pay had been set properly. A further indication that plaintiff's December, 1972, complaint concerned only the manner in which her pay was adjusted in November, 1971, is that she claims in the complaint that it was Mr. Dornsife who discriminated against her. Mr. Dornsife is the person who notified plaintiff of how her pay rate was determined. He had nothing to do with who was reduced in 1970. From these facts it appears that the government was completely justified when in the course of the investigation of this discrimination complaint, they dealt only with the issue of whether or not plaintiff's pay had been correctly set.

There is one further reason for justifying the manner in which the government processed plaintiff's discrimination complaint. If the plaintiff in December, 1972, was actually challenging a reduction in force in 1970 as being discriminatory, the government could have and probably would have rejected this challenge as being untimely made.

Further evidence that plaintiff in 1972 was only claiming discrimination based on how her salary was set is contained in a memorandum in the administrative record dated December 19, 1972, signed by W. L. Snyder, EEO Counselor. According to this memorandum the only counseling requested and the only complaint Mr. Snyder was involved with in his counseling of plaintiff was whether or not her salary was properly adjusted. In Mr. Snyder's own words:

"On 22 November 1972 Mrs. Yuna Mae Taylor, U.S. Army Support Center, requested advice and counsel on matters concerning salary adjustments during periods of grade changes and within grade waiting periods for step increases."

In summary, the facts in the record establish conclusively that

plaintiff's complaint of December 13, 1972, was that she was discriminated against in the manner in which her salary rate was adjusted. Not until she filed her claim in district court did plaintiff raise any allegations of discrimination concerning the 1970 reduction in force or any other discriminatory practices. Therefore, the only evidence which plaintiff will be permitted to present at trial must concern her salary adjustment on November 7, 1971. Since plaintiff has now conceded that her salary was properly adjusted, this matter has become moot. This case must be dismissed for lack of jurisdiction and for lack of a justiciable controversy.