**Diana Lollar HUBBARD, Individually and on behalf of all other persons similarly situated**

v.

**RUBBERMAID, INC. and Rubbermaid, Incorporated.**

**Civ. No. B–76–261.**

United States District Court,
D. Maryland.

Aug. 11, 1977.

Kenneth L. Johnson, Baltimore, Md. and Joseph A. Yablonski, Washington, D.C., for plaintiff.

Frank S. Astroth, Towson, Md., and Edward Katze, Atlanta, Ga., for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

■ This is an employment discrimination suit brought against Rubbermaid, Inc. and Rubbermaid, Incorporated [Rubbermaid] pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5 and the Fair Labor Standards Act, 29 U.S.C. §§ 201–19. Plaintiff is a former Rubbermaid market representative who alleges that Rubbermaid employees were assigned to and employed as market or sales representatives solely on the basis of their sex. Plaintiff seeks to maintain, in her own behalf and as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2), a broad based attack on allegedly discriminatory practices by Rubbermaid. Rubbermaid has moved to dismiss the complaint.[1]

■ Rubbermaid contends that the Title VII claim must be dismissed because plaintiff failed to file her charges of discrimination with the EEOC or this action within the periods required by 42 U.S.C. § 2000e–5. On September 9, 1974, plaintiff filed a discrimination charge with the Montgomery County, Maryland Commission on Human Relations. On January 2, 1975, the EEOC sent Rubbermaid a notice that plaintiff had filed a discrimination charge which it received on January 13, 1975. On July 21, 1975, plaintiff filed a charge of discrimination with the EEOC. On November 26, 1975, the EEOC issued its letter of determination that Rubbermaid had not violated Title VII with "regard to wages, benefits and different terms and conditions of employment." Plaintiff received a right to sue letter December 4, 1975 and instituted this action February 23, 1976. Plaintiff complied with the filing requirements of 42 U.S.C. § 2000e–5 and the motion to dismiss on this ground will be denied.

Plaintiff initiated Title VII's administrative processes by filing a complaint of discrimination with the Montgomery County Commission on Human Relations charging Rubbermaid with discrimination against women.[2] The EEOC notified Rubbermaid

---

1. Included among Rubbermaid's contentions is a motion to strike the entire complaint as being violative of Federal Rule of Civil Procedure 11. This contention borders on the frivolous and the motion to strike on this ground will be denied. *Child v. Beame,* 412 F.Supp. 593, 599–600 (S.D.N.Y.1976); *Murchison v. Kirby,* 27 F.R.D. 14 (S.D.N.Y.1961).

Rubbermaid also challenges plaintiff's standing to raise certain claims of discrimination. Insofar as it is relevant to Ms. Hubbard's individual claims, the standing issue is subsumed in the discussion of the scope of this suit *infra* and will not be treated separately. The court expresses no view on plaintiff's standing as a class representative. Nor will the court address the questions of plaintiff's ability to

maintain a class action brought under 29 U.S.C. § 216(b). The court will reach these questions when it considers the pending class certification motion.

2. The complaint, in its entirety, was the following:

I have worked for the company for 5 years. On April 1, 1974 I was assigned to full-time employment. I have been told that I will never make the same as a man. I have been made sales representative and am entitled to a larger car as stated on company car listing. I have been informed that I will not get a larger car but will use the smaller one that market representatives part-time (mostly) personnel use. My standard operating pro-

that plaintiff's charges related to wages, benefits, and terms and conditions of employment. Consistent with the EEOC notice, plaintiff's EEOC charge of discrimination mentions only wages, benefits, and terms and conditions of employment.[3] After an investigation, the EEOC issued its letter of determination which found that there was no reasonable cause to sustain a finding that Rubbermaid discriminated against plaintiff over her wages, benefits, and terms and conditions of employment.[4] In this suit, plaintiff seeks to expand the scope of her challenge to Rubbermaid's employment practices beyond wages, benefits, and terms and conditions of employment to include Rubbermaid's recruitment, job classification, hiring, assignment, promotion, transfer, layoff, recall, discipline, discharge, benefits, apprenticeship training programs, and maternity benefits policies as well. Rubbermaid has moved to dismiss all of the allegations which were not raised in plaintiff's original charge or the EEOC investigation, arguing that plaintiff is impermissibly attempting to broaden a narrow charge of discrimination.

▇▇▇ It is well settled that the filing of a discrimination charge with either a federal, state, or local agency is the essential first step in the administration of Title VII. *See, e. g., Stebbins v. Nationwide Mut. Ins. Co.,* 382 F.2d 267 (4th Cir. 1967), *cert. denied,* 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968). The charge is the basis for an investigation, which upon a finding of reasonable cause, prompts the issuance of a letter which in turn defines the areas of conciliation between the agency and the employer. *See Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970); *EEOC v. General Electric Co.,* 532 F.2d 359, 366 (4th Cir. 1976). Of course, a private plaintiff may maintain an action even where, as here, the EEOC finds no reasonable cause to believe the allegations of discrimination. *Gamble v. Birmingham Southern R.R. Co.,* 514 F.2d 678, 688 (5th Cir. 1975); *Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 161 n. 2 (5th Cir. 1971). Among the legion of opinions which discuss the scope of a Title VII suit, *Sanchez v. Standard Brands, Inc., supra,* is recognized as the leading case in this area of Title VII litigation. There the Fifth Circuit stated:

As a general proposition, it is well established that "the scope of an EEOC complaint should not be strictly interpreted." . . . Such a generalization, however, does not answer the more precise question of what *standard* is to be utilized in measuring the proper scope of a complaint. This circuit has never before considered this precise question. At least one district court in this circuit has addressed itself to the question, however, and in our judgment it responded to the question by giving the correct answer. In *King v. Georgia Power Co.,* D.C., 295 F.Supp. 943, Judge Smith held that the allegations in a judicial complaint filed pursuant to Title VII "may encompass any kind of discrimination like or related

---

3. Plaintiff's complete allegations were:

I believe the above employer has discriminated against me because of my sex with regards to wages. I do the same work as the men but I am being paid less, men receive benefits that I do not receive and I am being treated differently in regards to terms and conditions of employment.

4. The letter of determination, in pertinent part, stated:

Based on the investigation, the Commission finds no cause to believe that Respondent discriminated against Charging Party in violation of Title VII, of the Civil Rights Act of 1964, as amended, with regard to wages, benefits and different terms and conditions of employment, as alleged.

cedure book does not contain information that is in the books for men. Women employees are listed on a separate list from that of men. Men are paid on a yearly salary basis. I am paid on an hourly basis. In April men were invited to a conference in Wooster along with their wives. I was not, even though I am a sales representative which I have not been given the title of in writing. I am getting benefits and these are different from benefits received by men. I worked for years before I could get sick leave. I was hired at $2.50 per hour. A man that was hired 5 years ago made $6,000.00 per year. Mr. Foringer said he did me a favor by giving me hospitalization and life insurance.

to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission." . . . In other words, the "scope" of the judicial complaint is limited to the "scope" of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is *not* filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carrie[d] out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC *fails* to achieve voluntary compliance will the matter ever become the subject of court action. Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation. Within this statutory scheme it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

431 F.2d at 465–66 (emphasis original, citations and footnotes omitted). In cases where the plaintiff challenges areas of discrimination not alleged in the original complaint, some courts have used a "like or related test," [5] others have looked to the scope of a reasonable EEOC investigation based on the charge,[6] and some decisions have suggested that there is no meaningful difference between the two tests.[7] When faced with the question of the proper scope of a Title VII complaint, a court must balance two competing statutory policies. The first is that Title VII is a broad remedial statute designed to protect those who are the least able to protect themselves. An individual who files a discrimination charge seldom has the assistance of counsel and is not expected to articulate the entire range of allegedly discriminatory practices of which he feels he is a victim. Courts, therefore, have given a liberal interpretation to allegations in discrimination charges in order to effectuate the underlying purposes of Title VII. *Scott v. University of Dela-*

5. *Gamble v. Birmingham Southern R.R. Co.*, 514 F.2d 678, 687–89 (5th Cir. 1975); *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973); *Harris v. Pennsylvania*, 419 F.Supp. 10, 13–14 (M.D.Pa.1976); *Vuyanich v. Republic Nat'l Bank*, 409 F.Supp. 1083, 1088–90 (N.D.Tex.1976); *Willis v. Chicago Extruded Metals Co.*, 375 F.Supp. 362, 364–66 (N.D.Ill.1974); *Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829, 832–34 (N.D.Cal.1973); *Hecht v. CARE, Inc.*, 351 F.Supp. 305, 311 (S.D.N.Y.1972).

6. *McBride v. Delta Air Lines, Inc.*, 551 F.2d 113, 115 (6th Cir. 1977); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 399 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977); *Nance v. Union Carbide Corp.*, 540 F.2d 718, 727 (4th Cir. 1976), *vacated on other grounds*, —— U.S. ——, 97 S.Ct. 2672, 53 L.Ed.2d 269 (1977); *King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976); *EEOC v. Occidental Life Ins. Co.*, 535 F.2d 533, 541–42 (9th Cir. 1976), *aff'd on other grounds*, —— U.S. ——, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); *EEOC v. General Electric Co.*, 532 F.2d 359, 365–66 (4th Cir. 1976); *Woodrum v. Abbott Linen Supply Co.*, 428 F.Supp. 860, 862 (S.D.Ohio 1977); *Jiron v. Sperry Rand Corp.*, 423 F.Supp. 155, 159–62

(D.Utah 1975); *Askins v. Imperial Reading Corp.*, 420 F.Supp. 413, 415 (W.D.Va.1976); *Dupree v. Hertz Corp.*, 419 F.Supp. 764, 768–69 (E.D.Pa.1976); *EEOC v. Vinnell-Dravo-Lockheed-Mannix*, 417 F.Supp. 575, 577–78 (E.D. Wash.1976); *Camack v. Hardee's Food Systems, Inc.*, 410 F.Supp. 469, 475–76 (M.D.N.C. 1976); *Taylor v. Gillis*, 405 F.Supp. 542, 545–46 (E.D.Pa.1975); *Scott v. University of Delaware*, 385 F.Supp. 937, 942–43 (D.Del.1974); *Belcher v. Bassett Furniture Industries, Inc.*, 376 F.Supp. 593, 596 (W.D.Va.1974); *EEOC v. Honeywell, Inc.*, 73 F.R.D. 496, 497–98 (N.D.Ill. 1977); *Campbell v. A. C. Petersen Farms, Inc.*, 69 F.R.D. 457, 462–63 (D.Conn.1975); *Kinsey v. Legg, Mason & Co., Inc.*, 60 F.R.D. 91, 96–97 (D.D.C.1973); *Arey v. Providence Hospital*, 55 F.R.D. 62, 66–67 (D.D.C.1972).

7. *Jenkins v. Blue Cross Mut. Hospital Ins., Inc.*, 538 F.2d 164, 167–69 (7th Cir.) (*en banc*), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *EEOC v. National Cash Register Co.*, 405 F.Supp. 562, 566–67 (N.D.Ga.1975); *Ortega v. Construction & General Laborers' Union No. 390*, 396 F.Supp. 976, 980–81 (D.Conn.1975); *see also Piva v. Xerox Corp.*, 70 F.R.D. 378, 383–84 (N.D.Cal.1975).

*ware*, 385 F.Supp. 937, 942 (D.Del.1974); *Willis v. Chicago Extruded Metals Co.*, 375 F.Supp. 362, 365–66 (N.D.Ill.1974); *Arey v. Providence Hospital*, 55 F.R.D. 62, 66–67 (D.D.C.1972). The second policy is that Title VII plaintiffs should not have an unrestrained ability to litigate allegations of discrimination which are neither contained in the EEOC charge nor investigated by the EEOC, thereby frustrating the statutory scheme of informal persuasion and voluntary compliance. Without limitations, the importance of the EEOC conciliatory[8] procedures would be diminished and employers would be denied the opportunity to resolve disputes by EEOC settlement rather than by litigation. *Scott v. University of Delaware*, 385 F.Supp. at 941; *Briggs v. Brown & Williamson Tobacco Corp., Inc.*, 414 F.Supp. 371, 376–77 (E.D.Va.1976); *Belcher v. Bassett Furniture Industries, Inc.*, 376 F.Supp. 593, 596–97 (E.D.Va.1974).

The parties have diametrically opposed positions on the proper scope of this lawsuit. *Cf. Woodrum v. Abbott Linen Supply Co.*, 428 F.Supp. 860, 862–63 (S.D.Ohio 1977). Defendant argues that the second policy discussed above requires the court to limit the scope of the suit to plaintiff's allegations concerning wages, benefits, and terms and conditions of employment. Plaintiff, on the other hand, argues that the complaint need not track the language of the EEOC charge exactly and that all of the allegations in the complaint reasonably could have been within the scope of an EEOC investigation and that they are, therefore, properly before the court.

■ This court's task is to strike a balance between the competing and somewhat countervailing policies discussed above. That task is complicated by the fact that we deal here with a developing body of law which in the absence of pervasive appellate precedent has often led the lower courts to reach varied and often irreconcilable conclusions. The court fully agrees with the *Sanchez* holding that an unsophisticated Title VII litigant should not be limited to the precise wording found in his original charge of discrimination and that he may litigate all claims of discrimination uncovered in a reasonable EEOC investigation of that charge. The court, however, disagrees with plaintiff's broad assertion that a private plaintiff may litigate allegations of discrimination which are neither stated in the original charge of discrimination nor investigated by the EEOC. There is a critical distinction between protecting an unlettered employee whose poorly articulated charge of discrimination prompts an across-the-board investigation of a defendant's employment practices and protecting an employee who, with the aid of a sophisticated attorney, files an across-the-board attack premised on a reasonable, but limited, investigation of a well defined discrimination charge. In the former case, requiring a plaintiff to refile the charge to include the expanded charges

> would result in an inexcusable waste of valuable administrative resources and an intolerable delay in the enforcement of rights which require a "timely and effective remedy."

*EEOC v. General Electric Co.*, 532 F.2d 359, 365 (4th Cir. 1976) (footnotes omitted); *Gamble v. Birmingham Southern R.R. Co.*, 514 F.2d 678, 689 (5th Cir. 1975). But just as the spirit of Title VII would be violated by forcing a plaintiff to return to the Commission with additional claims of discrimination uncovered during an EEOC investigation, so too would it be violated by permitting a private plaintiff to litigate claims

---

**8.** Conciliation efforts by the EEOC are not a jurisdictional prerequisite for a private suit. *Russell v. American Tobacco Co.*, 528 F.2d 357 (4th Cir. 1975); *Johnson v. Seaboard Air Line R.R. Co.*, 405 F.2d 645, 649 (4th Cir. 1968). In cases where the EEOC has found that reasonable cause to believe the allegations of discrimination does not exist, no conciliation is attempted. Conciliation is, of course, a statutory prerequisite to action brought by the EEOC. 42 U.S.C. § 2000e–5(f); *Occidental Life Ins. Co. v. EEOC*, —— U.S. ——, ——, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); *Briggs v. Brown & Williamson Tobacco Corp., Inc.*, 414 F.Supp. 371, 376 (E.D.Va.1976).

neither charged before nor investigated by the EEOC.

Title VII's overall framework for eliminating discrimination in employment emphasizes voluntary compliance through informal persuasion at the administrative level with litigation being the choice of last resort for dispute resolution. The importance of conciliation, which is central to Title VII's effective administration, is exemplified by the mandatory conciliation which must precede a suit brought by the EEOC. The court, of course, recognizes that conciliation is not a prerequisite to the institution of a private Title VII suit. Nevertheless, conciliation, the keystone of Title VII, flows from the EEOC's investigation of the discrimination charge and its letter of determination. The Commission's processing of a discrimination charge is not done in a vacuum, rather it is necessarily in contemplation of Title VII's administrative and judicial scheme. The Commission's ultimate investigation, as reflected by the letter of determination, represents the agency's judgment on the scope of a reasonable investigation of the original charge.

■ Essentially, plaintiff seeks to have the court substitute its judgment on the scope of a reasonable investigation for that of the Commission.[9] If the court were to accede to plaintiff's request, it would give no more than lipservice to the second policy discussed above, in effect permitting plaintiff to challenge the entire spectrum of Rubbermaid's employment policies and practices under the guise of safeguarding Title VII's remedial purpose. The cases clearly show that once a court determines that a plaintiff may expand a Title VII suit beyond the scope of the original charge and resultant investigation, there is no principled or reasoned means to limit the scope of the suit short of the full panoply of a defendant's employment practices.

■ This the court will not do. It is one thing to permit a private plaintiff to file suit on claims which have been investigated by the EEOC in spite of the fact that conciliation has not taken place; it is quite another to allow that suit to encompass claims which never could have been conciliated because they were never presented to or uncovered by the EEOC in the first instance. At least in the former, a court, in a proper case, may stay proceedings for sixty days, giving the parties the opportunity to settle the dispute informally. No such option exists in the latter case and the problem is exacerbated where, as here, the EEOC investigates and finds no reasonable cause to support the original discrimination charges and the plaintiff thereafter attempts to expand her judicial complaint to encompass new areas of alleged discrimination which denies the defendant employer any possibility of settlement through conciliation. Unrestrained expansion of the scope of Title VII suits caused by a judicial failure to honor the second of the policies will result in valid claims being lost in the ever-increasing number of Title VII suits. If properly applied, the second policy eliminates those portions of Title VII complaints which are inappropriate for litigation because investigation and conciliation have not been accorded their proper role. Unless courts effectively employ the second policy, which in the last analysis is a restatement of traditional notions of fairness and due process to the employer, the remedial aspects of Title VII will be destroyed by litigation of discriminatory allegations in private suits which are neither the subject of the original charge, the EEOC investigation, nor the Commission's letter of determination. In the absence of any indication of dereliction by the agency, it is this court's opinion that the scope of an EEOC investigation should be conclusive on the

---

**9.** In other contexts, courts look only to see if the agency's decision was supported by substantial evidence. The court recognizes the difference between the EEOC's powers and those of other agencies such as the NLRB. *See EEOC v. General Electric Co.*, 532 F.2d 359, 367–68 & n. 20a (4th Cir. 1976). While the lack of adjudicatory powers results in a *de novo* trial on the merits of the EEOC decision, that does not require a court to ignore the Commission's expertise on the scope of a reasonable investigation of a discrimination charge.

scope of a subsequent Title VII suit with two limited exceptions.[10]

■ Turning to the specific facts before the court, plaintiff filed two charges of discrimination and in both she alleged that she was the victim of sexual discrimination regarding wages, benefits, and terms and conditions of employment. Neither of the charges indicate that plaintiff alleged any discrimination beyond those three areas. The EEOC letter of determination shows that the investigation was limited to Rubbermaid's employment policies regarding wages, benefits, and terms and conditions of employment, and does not suggest any dereliction of the agency's statutory duties. The EEOC found no reasonable cause to support plaintiff's charge and no conciliation was attempted. Conceptually, plaintiff seeks to expand the scope of this suit horizontally to include areas of employment which are unrelated to wages, benefits, and terms and conditions of employment. This case, therefore, is distinguishable from *Gamble v. Birmingham Southern R. R. Co.,* 514 F.2d 678 (5th Cir. 1975), where the court permitted the expansion of the judicial complaint to include additional limited allegations of discrimination. Plaintiffs originally charged that the railroad discriminatorily denied switchmen promotions to conductors. The Fifth Circuit, finding that the discrimination was of the same type and character as originally charged, reversed the district court's refusal to expand the scope of the suit to include allegations concerning promotions to supervisory positions. 514 F.2d at 689. *Gamble,* therefore, involved a vertical expansion of a complaint to include new allegations of discrimination within a distinct employment hierarchy. That is not the situation that exists in this case because the additional allegations of discrimination are of a different type, *e. g., hiring,* although they are of the same character.

Two recent Fourth Circuit cases, *King v. Seaboard Coastline R. R. Co.,* 538 F.2d 581 (4th Cir. 1976), and *Nance v. Union Carbide Corp.,* 540 F.2d 718, 727 (4th Cir. 1976), *vacated on other grounds,* —— U.S. ——, 97 S.Ct. 2672, 53 L.Ed.2d 269 (1977), support Rubbermaid's contention that the scope of this lawsuit must be limited to the charges which were the subject of the EEOC letter of determination. In *King,* the EEOC did not investigate plaintiff's charge that "drunks" were treated more generously than the plaintiff, but it did issue a right to sue letter. Holding that plaintiff had not stated a claim cognizable under Title VII, the Fourth Circuit discussed the scope of a civil suit as a function of the EEOC charge, stating that the

charge, enlarged only by such EEOC investigation as reasonable proceeds therefrom, fixed the scope of the charging party's subsequent right to institute a civil suit. The suit filed may encompass only the "discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge."

538 F.2d at 583 (footnote omitted). The court found plaintiff had not stated a cause of action under Title VII because discrimination based on alcoholic proclivities was not "based on race or sex nor reasonably related to or like a race or sex discrimination" and that no "EEOC investigation could under any theory have enlarged that charge to embrace racial discrimination." 538 F.2d at 583. In *Nance,* plaintiff, an assembly line worker who was laid off, charged the defendant employer with sexually discriminatory employment practices. In addition to the employment practices which directly affected her as a line employee, plaintiff asserted, but was unable to prove, that she had been discriminated

**10.** One exception is an instance where discrimination at an entry level eliminates an employee from the applicant pool for the next employment level. Stated another way, a situation where the inability to reach the first rung of a ladder prevents advancement to the higher rung. *See Gamble v. Birmingham Southern*

*R.R. Co.,* 514 F.2d 678 (5th Cir. 1975) and discussion *infra.* The second exception is where an employer acts in reprisal against an employee because a discrimination charge has been filed. *See Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998, 1004–08 (5th Cir. 1969); 42 U.S.C. § 2000e–3.

against in consideration for a supervisory position. Plaintiff had not included any claims concerning promotion in the five charges of discrimination which she filed. With respect to the district court's jurisdiction over plaintiff's promotion allegations, the Fourth Circuit noted:

It is highly questionable under these circumstances that this issue was properly before the court. We have recently held that a suit under Title VII "may encompass only the 'discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge.'" *King v. Seaboard Coast Line Railroad Company.*

540 F.2d at 727 (footnote and citation omitted).

Rubbermaid argues, based upon the above-quoted language, that the EEOC's investigation of Ms. Hubbard's charge as reflected in the letter of determination defines the scope of this private Title VII action. Both *King* and *Nance* quote from the Fourth Circuit's opinion in *EEOC v. General Electric Co.,* 532 F.2d 359 (4th Cir. 1976), where the court delineated the scope of a Title VII suit:

*So long as the new discrimination arises out of the reasonable investigation of the charge filed,* it can be the subject of a "reasonable cause" determination, to be followed by an offer by the Commission of conciliation, and, if conciliation fails, by a civil suit, without the filing of a new charge on such claim of discrimination. In other words, the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for *any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge,* provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act.

532 F.2d at 366 (emphasis original, footnote omitted). *General Electric* is distinguishable from the case before the court because, first, it was an EEOC and not a private suit

and, second, the additional claims of discrimination had been investigated and were included in the EEOC letter of determination. Additionally, the employer had the opportunity for conciliation because the plaintiff was required to attempt conciliation before instituting suit. Although an argument could be made that the *General Electric* decision is applicable only to EEOC suits because of the mandatory conciliation requirement imposed on the Commission, the *King* and *Nance* opinions, as well as other language in *General Electric,* strongly suggest that the opinion should not be construed so narrowly. Later in *General Electric,* the court stated that so long as evidence to support the additional claims of discrimination "would naturally have been gathered during a proper investigation of the charges" a sufficient nexus will permit the expansion of a judicial complaint. *King* and *Nance* are two examples of cases where a sufficient nexus was lacking. In *King,* the court found that it was inconceivable under all theories that the EEOC permissibly could have broadened the scope of the investigation to include racial discrimination. *Nance* is not such an extreme example but it is instructive in the court's consideration of this case. Although the district court in *Nance* did not make an explicit finding in *Sanchez* terms that the additional allegations concerning promotions were within the scope of a reasonable investigation of the original charges, the district court did find that all of plaintiff's claims, including promotion, "were considered or should have been considered by the EEOC." *Nance v. Union Carbide Corp.,* 397 F.Supp. 436, 459 (W.D.N.C.1975). In context it is apparent that the Fourth Circuit's questioning of the propriety of jurisdiction over promotion questions was a substantive disagreement with the district court's finding. The Fourth Circuit's concern was based on plaintiff's failure to mention her employer's alleged discriminatory promotion policies in any of the five charges she made over the course of a year. Although Ms. Hubbard filed three fewer discrimination charges, just as in *Nance,* neither of her charges made any reference to any of Rubbermaid's

employment practices beyond wages, benefits, and terms and conditions of employment. The EEOC investigation did not uncover any other areas where discrimination existed and, as the letter of determination shows, the Commission found no reasonable cause to support the allegations in three specific areas charged. With this background, plaintiff now seeks to litigate virtually all of Rubbermaid's employment practices. This is not a case like *Gamble* where the expanded allegations are of the same type and character as those originally charged. 514 F.2d at 688–89. Nor is it a case where an investigation uncovered a root source of discrimination which justifies the expansion of the judicial complaint to encompass different kinds of discrimination. *See EEOC v. General Electric Co.,* 532 F.2d at 368–69. Far from the situation in *General Electric* where the expanded charges were developed during the course of an investigation, the expanded charges in this suit were never any part of the EEOC investigatory processes. Compounding that fact is the Commission's determination that no reasonable cause existed to support the charges which it did investigate. The sentiments expressed by the court in *Arey v. Providence Hospital,* 55 F.R.D. 62 (D.D.C. 1972) are particularly appropriate to the facts presented here:

> [T]he court is concerned that a disgruntled employee . . . may discover a weapon of revenge in the form of a major class suit under Title VII, when the reason for that employee's discontent stems from causes other than . . . sex discrimination. The opportunity for harassment of employers abounds regardless of the final outcome of the litigation.

Moreover, if the employee lost the suit he may be precluding other employees whom he included in the class from instituting legitimate claims in the future.

55 F.R.D. at 68. The holding of this court is that the scope of this litigation is limited to Rubbermaid's employment practices regarding wages, benefits, and terms and conditions of employment.[11] This is what plaintiff alleged before both the Montgomery County Commission on Human Relations and the EEOC. The EEOC's reasonable investigation of the original charges, as defined by the Commission's letter of determination, was limited to these three specific areas of Rubbermaid's employment practices and delimits the scope of this action. Having found that the additional allegations were neither uncovered during the course of a reasonable investigation of the original charges nor of the same type and character as the original charges, Rubbermaid's motion to dismiss all of plaintiff's allegations except for those concerning wages, benefits, and terms and conditions of employment will be granted.

■ One last point must be addressed. Rubbermaid has moved to strike the allegation in paragraph 6(e) that Rubbermaid discriminatorily denied plaintiff a transfer to its Richmond, Virginia operation, thereby constructively discharging her. Rubbermaid argues that plaintiff's failure to raise the constructive discharge claim before the EEOC precludes its inclusion in this action. Plaintiff concedes that she did not file an EEOC charge regarding the constructive discharge allegation, but contends that, having filed an initial discrimination charge, she is not required to return to the EEOC with her additional claims.

---

**11.** Almost by definition, "terms and conditions of employment" is an amorphous phrase which takes on significance only when placed in the context of a specific charge of discrimination. Under the facts of this case, the expression means all forms of monetary and nonmonetary compensation which are integrally related to Rubbermaid's wage structure. These would include, for example, the type of automobile assigned to employees, limitations on familial travel at company expense, or other nonremunerative fringe benefits such as the eligibility for bonus and incentive plans. While "terms and conditions of employment" is a catch all provision, under no circumstances in this case could it be said to include the range of employment policies plaintiff seeks to litigate. EEOC Form 131 (March 1974), which was utilized in this case, contains a frame of reference for and examples of the types of discrimination frequently raised. The boxes checked are entirely consistent with the limited charge made to the EEOC and this is not a case where plaintiff checked the wrong box. *Cf. Sanchez v. Standard Brands, Inc., supra.*

Plaintiff's reliance on the following language in *EEOC v. General Electric Co.,* 532 F.2d 359, 365–66 (4th Cir. 1976), is misplaced.

> To require a new charge based on those facts and to begin again the administrative process thereon, would result in an inexcusable waste of valuable administrative resources and an intolerable delay in the enforcement of rights which require a "timely and effective remedy." That procedure, as the Supreme Court said in a somewhat similar context in *Love v. Pullman Co.,* . . . "would serve no purpose other than the creation of an additional procedural technicality." (footnotes and citation omitted).

When read in context, it is apparent that *General Electric* supports Rubbermaid's rather than plaintiff's position. The quotation does not refer to additional claims of discrimination arising after the termination of the EEOC administrative process. Instead the reference to "those facts" relates only to additional charges uncovered during the EEOC investigation. The policy underlying the inclusion of claims uncovered by the EEOC, as the Fourth Circuit noted, is the avoidance of "a repetitive investigation of the same facts already developed in the ongoing investigation." 532 F.2d at 365. The situation in this case differs significantly from that in *General Electric* because first, the alleged additional discrimination arose after rather than during the EEOC investigation and second, the filing of a second charge would not have prompted a duplicative investigation since the constructive discharge claim does not bear any significant relationship to plaintiff's prior charges concerning wages, benefits and terms and conditions of employment, beyond the fact that Ms. Hubbard was the individual allegedly aggrieved in both instances. Of course, any investigation of the constructive discharge claim would have included some minimal gathering of repetitive base data, *e. g.,* number of women

relative to the total workforce, but this is not the duplicative administrative effort referred to in *General Electric.* Unlike the situation in *General Electric* where an investigation of refiled charges would have been coextensive with the investigation which uncovered them, an investigation of Ms. Hubbard's constructive discharge claim would have dealt with a set of operative facts distinct from and unrelated to her charges concerning wages, benefits and terms and conditions of employment.[12] Plaintiff also relies on *Harris v. Pennsylvania,* 419 F.Supp. 10 (M.D.Pa.1976). *Harris,* however, is distinguishable from the facts of this case because there the EEOC investigated plaintiff's discharge claim and included it in its administrative determination. 419 F.Supp. at 13–14.

Accordingly, it is this 11th day of August, 1977, ORDERED that Rubbermaid's motion to dismiss all of plaintiff's claims except for those concerning wages, benefits, and terms and conditions of employment and Rubbermaid's motion to strike paragraph 6(e) are GRANTED.

---

12. Even if the court were to find that the constructive discharge claim were like or related to plaintiff's original charge, the claim still would be dismissed because it arose after rather than

during the pendency of the original charge before the EEOC. *Cf. Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir. 1973).