**Larry C. EVANS, Plaintiff,**

v.

**CENTRAL OF GEORGIA RAILROAD COMPANY, Defendant.**

**No. C85–1683A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 15, 1985.

R. David Ware (Floyd, Howard & Ware), Atlanta, Ga., for plaintiff.

Carey P. DeDeyn, Patricia B. Cunningham, Sutherland, Asbill & Brennan, Atlanta, Ga., for defendant.

## ORDER OF COURT

MOYE, Chief Judge.

The above-styled action is before the Court on the plaintiff's motion to strike the defendant's eighth defense. On September 5, 1985, this Court issued an order to show cause why the plaintiff's claims under 42 U.S.C. § 1981 should not be dismissed for lack of subject matter jurisdiction pursuant to § 153 First (i) of the Railway Labor Act. A review of the relevant case law shows, for the reasons set forth below, that plaintiff's § 1981 claims must be DISMISSED for lack of subject matter jurisdiction.

The plaintiff, a black male, began his employment with the defendant, Central of Georgia Railroad Company, in 1974. He alleges in his complaint that he was harassed and treated in a discriminatory fashion by the defendant through its trainmaster. For example, plaintiff alleges that the trainmaster suspended him from work for alleged violations of rules. Furthermore, he contends that he was suspended for a longer period of time than white employees who violated the same or similar rules. The plaintiff also contends that the trainmaster used profanity and made racial slurs which specifically referred to him. The plaintiff feels that such behavior undermined his authority in the presence of white employees under his supervision.

The plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission. On November 9, 1984, the EEOC issued a Notice of Right to Sue to the plaintiff who filed this complaint before the Court within ninety days. Plaintiff seeks both compensatory and punitive damages and injunctive relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, as amended, and § 1 of the 1866 Civil Rights Act, 42 U.S.C. § 1981.

In its answer to the complaint, the defendant listed the following as its Eighth Defense: "Plaintiff's claims are barred by reason of plaintiff's failure to exhaust the administrative and arbitral remedies afforded to him under provisions of the Railway Labor Act and provisions of applicable collective bargaining agreements." It is this defense which plaintiff moves this Court to strike.

In support of his position, plaintiff argues that it is well-established that the only administrative and procedural remedies which he must pursue prior to bringing a Title VII case are those available through the EEOC. *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). *See also Evans v. Electrical Workers (IBEW), Local 2127*, 313 F.Supp. 1354 (N.D.Ga.1970). The defendant concedes that this is true as to the plaintiff's Title VII claim but contends that its defense is valid as to plaintiff's Section 1981 cause of action.

As an initial step, it is incumbent upon this Court to note that it is well-established law that, although somewhat overlapping with Title VII, § 1981 is available to a plaintiff as a completely independent remedy. *Johnson*, 421 U.S. at 460, 95 S.Ct. at 1720; *Sanders v. Dobbs Houses, Inc.*, 431 F.2d 1097 (5th Cir.1970); *Caldwell v. National Brewing Co.*, 443 F.2d 1044 (5th Cir.1971), *cert. denied*, 405 U.S. 916, 92 S.Ct. 931, 30 L.Ed.2d 785 (1972); *Hill v. American Airlines, Inc.*, 479 F.2d 1057 (5th Cir.1973); *Alpha Portland Cement Co. v. Reese*, 507 F.2d 607 (5th Cir.1975). Title VII of the Civil Rights Act of 1964 was enacted "to assure equality of employ-

ment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147 (1974). Title 42 U.S.C. § 1981, on the other hand, relates primarily to racial discrimination in the making and enforcing of contracts. *Johnson*, 421 U.S. at 459, 95 S.Ct. at 1719. Title VII contains no language which could be remotely construed as directly repealing § 1981. *Sanders*, 431 F.2d at 1100. Furthermore, while enacting numerous amendments to Title VII in 1972, Congress refused to modify Title VII's role as a supplemental remedy. *Alpha Portland Cement Co.*, 507 F.2d at n. 3. A fortiori, it is equally well established that procedural barriers to Title VII actions do not have the effect of barring a plaintiff from seeking a § 1981 remedy in the federal courts. *Caldwell*, 443 F.2d at 1046 (Plaintiff not required to exhaust administrative procedure before EEOC before maintaining a § 1981 action).

This analysis, however, does not answer the question before this Court. The issue raised in this action involves the interaction between § 1981 [1] and § 153 First (i) of the Railway Labor Act [2] and not between § 1981 and Title VII. This question was, in fact, specifically left open by the Supreme Court in *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). In *Johnson* the Court stated:

> The District Court also based its dismissal of petitioner's § 1981 claim against

---

**1.** In full, § 1981 reads:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**2.** In full, § 153 First (i) reads:

The disputes between an employee or group of employees and a carrier or carriers grow-

ing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.

REA on the alternative ground that he had failed to exhaust his administrative remedies under the Railway Labor Act, 44 Stat. 577, 45 U.S.C. § 151 *et seq.* App. 102a. The Court of Appeals did not address the exhaustion argument. Inasmuch as we limited our grant of certiorari to the limitation issue, 417 U.S. 929 [94 S.Ct. 2639, 41 L.Ed.2d 232] (1974), we have no occasion here to express a view as to whether a § 1981 claim of employment discrimination is ever subject to a requirement that administrative remedies be exhausted.

Id. at 456–57, n. 3, 95 S.Ct. at 1718–19, n. 3.

Some courts which have considered the issue have held that actions to enforce § 1981 are not subject to any exhaustion requirement. *E.g., Taylor v. Jones,* 495 F.Supp. 1285 (E.D.Ark.1980); *Stewart v. City of Pontotoc, Miss.,* 461 F.Supp. 767 (N.D.Miss.1978). Still others have held that exhaustion of remedies is not required except in suits against the federal government. *E.g., Taylor v. Gillis,* 405 F.Supp. 542 (E.D.Pa.1975); *Raether v. Phillips,* 401 F.Supp. 1393 (W.D.Va.1975). This Circuit has taken a somewhat more flexible approach to the exhaustion doctrine in civil rights cases. "It should be noted that the application of the exhaustion doctrine with its traditional exceptions is far from an exact science. ... In most situations the decision to require exhaustion or not comes after careful analysis and thoughtful balancing of the interests for and against exhaustion." *Patsy v. Florida International University,* 634 F.2d 900, 904 (5th Cir. 1981). "Application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved." *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). It is with these principles in mind that this Court must proceed to analyze the issue at hand.

As previously noted, § 1981 deals primarily with racial discrimination in the making and enforcing of contracts. Furthermore, the Supreme Court has held that § 1981 can provide a plaintiff with a federal remedy against discrimination in private employment on the basis of race. *Johnson,* 421 U.S. at 459–60, 95 S.Ct. at 1719–20. However, it is this Court's belief that in enacting the Railway Labor Act, Congress has made clear its intention that certain types of contract grievances in this important national industry must be pursued through the System Board of Adjustment and not the federal courts.

While it is true that at one time, grievance procedures under the Railway Labor Act were considered optional, such is no longer the case. The Supreme Court in *Andrews v. Louisville & Nashville Railroad,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), made this clear when it said, "the notion that the grievance and arbitration procedures provided for minor disputes in the Railway Labor Act are optional, to be availed of as the employee or the carrier chooses, was never good history and is no longer good law." *Id.* at 322, 92 S.Ct. at 1564. The Court reaffirmed this result in a per curiam opinion a few years later in *Union Pacific Railroad v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402–03, 58 L.Ed.2d 354 (1978):

In enacting [the Railway Labor Act], Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements. *See Gunther v. San Diego & A.E.R. Co.,* [382 U.S. 257 [86 S.Ct. 368, 15 L.Ed.2d 308] (1965) ]; *Union Pacific R. Co. v. Price,* [360 U.S. 601 [79 S.Ct. 1351, 3 L.Ed.2d 1460] (1959) ]; *Slocum v. Delaware, L. & W.R. Co.,* 339 U.S. 239 [70 S.Ct. 577, 94 L.Ed. 795] (1950). The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions. *Union Pacific R. Co. v. Price,* [360 U.S.] at 611 [79 S.Ct. at 1357]; *Elgin J. & E.R. Co. v. Burley,* 327 U.S. 661, 664 [66 S.Ct. 721, 722, 90 L.Ed. 928]

(1946). Congress considered it essential to keep these so-called "minor" disputes within the Adjustment Board and out of the courts. *Trainmen v. Chicago R. & I.R. Co.*, 353 U.S. 30, 40 [77 S.Ct. 635, 640, 1 L.Ed.2d 622] (1957). The effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations.[3]

At the threshold, then, this Court must determine whether the plaintiff's § 1981 claim against the defendant is "major" or "minor" in order to apply properly the dictates of the Railway Labor Act. As the court in *Reed v. National Air Lines, Inc.*, 524 F.2d 456, 458–59 (5th Cir.1975), said,

[t]he Act does not use the terms 'major' or 'minor' dispute. Rather, it refers to 'disputes concerning rates of pay, rules, or working conditions,' and to 'disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.' 45 U.S.C.A. § 151a. The Supreme Court has categorized the former as major disputes and the latter as minor ones, *Elgin, Joliet & Eastern Railway Co. v. Burley*, 1945, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886.

A major dispute occurs when it involves the formation of collective bargaining agreements, or an attempt to change the terms of such agreements. It is future-directed: it seeks the acquisition of rights. *Id.* at 723, 65 S.Ct. 1282.

A minor dispute relates to the meaning or proper application of a particular provision of a collective bargaining agreement. It is concerned with 'specific maladjustments of a detailed or individual quality.' A minor dispute is past-directed: it seeks the recognition of rights

claimed to have vested or accrued. *Id.* at 723–24, 65 S.Ct. 1282, 1290.

The distinction is crucial because the Railway Labor Act contemplates and commands that the parties settle all 'minor' disputes through grievance procedures. If such procedures fail, either party has the right of recourse to compulsory arbitration by way of appeal to the National Railroad Adjustment Board. 45 U.S.C. § 153 First (i); *Rader v. United Transp. Union*, 718 F.2d 1012 (11th Cir.1983); *See also Hendley v. Central of Georgia Railroad*, 442 F.Supp. 482, *rev'd on other* grounds, 609 F.2d 1146 (1980) *cert. denied*, 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981) (S.D.Ga.1977).

▮ In general, § 1981 affords protection against racial discrimination in the making or enforcement of contracts. The gravamen of the plaintiff's § 1981 claims is that the disciplinary and work provisions of his collective bargaining agreements have been applied by the defendant in a discriminatory manner. There is little doubt, however, that the plaintiff's § 1981 claim is a "minor" dispute under the Railway Labor Act. Although *Andrews* involved an alleged "wrongful discharge", the reasoning utilized by the Supreme Court in that case is equally applicable to the current plaintiff's claims of "harassing and discriminatory treatment" culminating in suspension. The *Andrews* Court stated:

The fact that petitioner characterizes his claim as one for "wrongful discharge" does not save it from the Act's mandatory provisions for the processing of grievances.... [T]he only source of petitioner's right not to be discharged, and therefore to treat an alleged discharge as

---

**3.** This Court does not express any opinion at this time as to the reviewability of a Board determination of the merits of the plaintiff's § 1981 claim. The Court does note, however, that the *Andrews* Court stated that "in at least some situations the Act makes the federal administrative remedy exclusive, rather than merely requiring exhaustion of remedies in one forum before resorting to another." *Andrews*, 406 U.S. at 325, 92 S.Ct. at 1565–66. Furthermore, the Court in *Union Pacific* said that,

[j]udicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. 45 U.S.C. § 153 First (q). Only upon one or more of these bases may a court set aside an order of the Adjustment Board. *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. at 93, 99 S.Ct. at 402.

a "wrongful" one that entitles him to damages, is the collective-bargaining agreement between the employer and the union.... Thus petitioner's claim and respondent's disallowance of it, stem from differing interpretations of the collective bargaining agreement.... His claim is therefore subject to the Act's requirement that it be submitted to the Board for adjustment.

*Andrews,* 406 U.S. at 323–24, 92 S.Ct. at 1564–65. *See also Brown v. American Airlines, Inc.,* 593 F.2d 652 (5th Cir.1979) (claims of breach of "common law contract" is insufficient under Railway Labor Act for federal jurisdiction); *Woodrum v. Southern Ry. Co.,* 571 F.Supp. 352 (M.D. Ga.1983) (claim that charges of "disloyalty" resulting in discharge were based upon a fraudulent affidavit was insufficient under Railway Labor Act for federal jurisdiction); *Riddle v. Trans World Airlines, Inc.,* 512 F.Supp. 75 (W.D.Mo.1981) (claim of "wrongful discharge" or "termination due to indefinite suspension" is a minor dispute within the Railway Labor Act); *But see Yawn v. Southern Ry. Co.,* 591 F.2d 312 (5th Cir.1979) (claim of negligence filed under the Federal Employees' Liability Act held not subject to Railway Labor Act's exhaustion requirement); *Evans v. Electrical Workers (IBEW), Local 2127,* 313 F.Supp. at 1358 (when plaintiff invokes statutory rather than contractual rights, plaintiff need only follow the procedures set forth under the statute) In this case, as in *Andrews,* the source of the petitioner's right not to be wrongfully suspended or not to be suspended for an undue length of time is in the applicable collective bargaining agreements.

 The usual rule is that an employee who claims a violation by his employer of the collective bargaining agreement is bound by its terms as to the method of enforcement of his claims. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). *See also Rabalais v. Dresser Industries, Inc.,* 566 F.2d 518 (5th Cir.1979). However, as previously indicated, traditional exceptions to this rule exist. No exhaustion is necessary if (1) the union wrongfully refuses to process the employee's griev-

ance, thus violating its duty of fair representation, *Vaca,* 386 U.S. at 185, 87 S.Ct. at 914. *See also Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (federal court has jurisdiction over a suit against both the employer and the union even though the employer was not an indispensable party because it was a suit by employees against both the union and the employer to enforce their statutory rights and not a suit under § 153 First (i) which covers only "disputes between an employee or group of employees and a carrier or carriers."); *Glover v. St. Louis-San Francisco Railway Co.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969). *Cf. Rader,* 718 F.2d at 1014 (mere assertion of collusion between union and employer coupled with failure to pursue grievance by union is insufficient to invoke federal court jurisdiction); (2) the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract, *Vaca,* 386 U.S. at 185, 87 S.Ct. at 914; (3) the prescribed administrative remedy is plainly inadequate because no remedy is available, the available remedy will not give relief commensurate with the claim or the remedy would be so unreasonably delayed as to create a serious risk of irreparable injury, *Walker v. Southern Railway,* 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966); (4) the claimant seeks to have a legislative act declared unconstitutional and administrative action will leave standing the constitutional question, *Public Utilities Commission v. United States,* 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); (5) the question of the adequacy of the administrative remedy is for all intents and purposes co-extensive with the merits of the claim, such as when, for instance, the claimant contends that the administrative system itself is unlawful or unconstitutional in form or application, *Fuentes v. Roher,* 519 F.2d 379 (2d Cir.1975); and, (6) it would be futile to comply with the administrative procedure because it is clear that the claim would be rejected. *Glover,* 393 U.S. at 330, 89 S.Ct. at 551. *Cf. Oliver v. Local No. 1261 United Transportation Union-Enginemen & Southern Railway*

*Co.,* 587 F.Supp. 3 (N.D.Ga.1984) (mere allegations of futility are insufficient).

In the present action, the plaintiff has not alleged that any of these enumerated exceptions are applicable. Furthermore, this Court notes as a general matter that exceptions to the exhaustion requirement are not favored in the law, if they survive *Andrews* at all. *Id.* at 5.

In summary, given the strong congressional intent that "minor" disputes under the Railway Labor Act be settled through the grievance procedures called for by that Act and the applicable collective bargaining agreements and since no exception to the exhaustion provisions of that Act have been shown to be applicable, this Court DISMISSES the plaintiff's § 1981 claim on the grounds that the System Board of Adjustment has been vested by Congress with exclusive jurisdiction to hear this claim.